759 P.2d 186

**RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A., Petitioner,**

v.

**REVENUE DIVISION OF the DEPARTMENT OF TAXATION AND REVENUE OF the STATE of NEW MEXICO, Respondent.**

No. 17617.

Supreme Court of New Mexico.

Aug. 10, 1988.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Richard C. Minzner, Paul D. Barber, James O. Browning, Albuquerque, for petitioner.

Hal Stratton, Atty. Gen., Frank D. Katz, Daniel Yohalem, Sp. Asst. Attys. Gen., Santa Fe, for respondent.

## OPINION

STOWERS, Justice.

We granted certiorari in this case to determine whether the New Mexico gross receipts tax applies to legal services performed by a non-Indian law firm off a reservation on behalf of Indian Tribes for claims against the United States pursuant to the Indian Claims Commission Act of 1946, (the Act) 25 U.S.C. Sections 70 to –70v–3 (1976), as amended Pub.L. No. 95–69 § 29(a), 91 Stat. 273 (July 20, 1977).

The district court held that federal law preempted the state tax imposed by the respondent Revenue Division of the Department of Taxation and Revenue (Revenue Division) and granted summary judgment to petitioner Rodey, Dickason, Sloan, Akin & Robb, P.A. (Rodey). The court of appeals reversed, holding that the Act did not preempt the imposition of the tax and the tax did not constitute an impermissible infringement on tribal self-government or

Indian sovereignty, and remanded back to the district court to determine what portion of the legal services performed by Rodey took place outside New Mexico.

We granted certiorari and affirm the court of appeals' decision but on different grounds. We affirm only the result reached by the court of appeals insofar as it held that the Revenue Division properly imposed a gross receipts tax on the legal services performed by Rodey.

■ We do not agree with the court of appeals' reasoning that the New Mexico gross receipts tax imposed on legal services performed by a non-Indian law firm off the reservation requires a federal preemption by implication analysis. The federal preemption by implication doctrine created by the United States Supreme Court to protect Indian interests on the reservation does not apply to activities of non-Indians occurring off Indian reservations. *See Ramah Navajo School Bd., Inc. v. Bureau of Revenue,* 458 U.S. 832, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982) (*Ramah*).

The material facts, set forth in the court of appeals' opinion, are as follows. Rodey represented the Navajo Tribe in claims before the Federal Indian Claims Commission and the United States Court of Claims under the Act. The claims initially were filed in 1950 and 1951 and Rodey was retained in 1973 to prosecute those claims. In 1982 the parties reached a settlement resulting in two judgments in favor of the Tribe for $36,800,000. The statutory maximum, or ten percent of the judgments, was allocated as attorney fees in accordance with the Act. Rodey received a portion of this allocation amounting to $2,286,000. It paid the New Mexico gross receipts tax on that amount totalling approximately $93,000, and then filed for a refund. No portion of the tax was paid by the Tribe. Rodey performed at least fifty percent of its legal services in connection with these claims outside of the tribal reservation but within the State of New Mexico, and in addition, Rodey claims it performed some work on the reservation, some in Arizona, Utah and in Washington D.C. The Revenue Division denied the refund and Rodey filed suit in the district court.

The Revenue Division argues that based on the preemption cases, *Ramah*, 458 U.S. 832, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982), *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980) (*White Mountain*), *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973) (*Mescalero*), and *Warren Trading Post Co. v. Arizona Tax Commission*, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965) (*Warren Trading Post*), the tax imposed on Rodey for legal work performed off the reservation is not preempted by federal law. And, the preemption by implication doctrine, which balances federal, state and tribal interests, is inapplicable to activities taking place off the reservation. Rodey, on the other hand, claims that the preemption by implication analysis applies whenever the taxed activity deals with reservation Indians in a federally-regulated area, irrespective of whether the activity takes place on or off the reservation.

■ "Absent federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State." *Mescalero*, 411 U.S. at 148–49, 93 S.Ct. at 1270. Exemptions from state taxes are not granted by implication, *Oklahoma Tax Commission v. United States*, 319 U.S. 598, 606, 63 S.Ct. 1284, 1287–88, 87 L.Ed. 1612 (1943); *United States Trust Co. v. Helvering*, 307 U.S. 57, 60, 59 S.Ct. 692, 693–94, 83 L.Ed. 1104 (1939). *Trotter v. Tennessee*, 290 U.S. 354, 356, 54 S.Ct. 138, 139, 78 L.Ed. 358 (1933), only an actual conflict with explicit provisions of a federal statute will preempt a state tax. In the instant case no federal statute exists that expressly forbids state taxation of the attorney fees received by counsel pursuant to the Act.

Because there is no explicit preemption, Rodey bases its claim for a tax exemption on the preemption by implication doctrine, which evolved as an exception to the requirement of explicit tax exemption. In *White Mountain*, the Supreme Court stat-

ed the basis of the preemption by implication doctrine with respect to Indian tribes.

The unique historical origins of tribal sovereignty make it generally unhelpful to apply to federal enactments regulating Indian tribes those standards of preemption that have emerged in other areas of the law * * *. We have thus rejected the proposition that in order to find a particular state law to have been pre-empted by operation of federal law, an express congressional statement to that effect is required.

*White Mountain,* 448 U.S. at 143–44, 100 S.Ct. at 2583 (citations omitted). This analysis includes two independent but related barriers to the assertion of state taxing authority over Indian tribes, their reservations and their activities.

First, the exercise of such authority may be pre-empted by federal law. Second, it may unlawfully infringe "on the right of reservation Indians to make their own laws and be ruled by them." *Williams v. Lee,* 358 U.S. 217, 220 [79 S.Ct. 269, 270–71, 3 L.Ed.2d 251] (1959). The two barriers are independent because either, standing alone, can be a sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members. They are related, however, in two important ways. The right of tribal self-government is ultimately dependent on and subject to the broad power of Congress. Even so, traditional notions of Indian self-government are so deeply engrained in our jurisprudence that they have provided an important "backdrop," *McClanahan v. Arizona State Tax Comm'n,* [411 U.S. 164, 172, 93 S.Ct. 1257, 1262, 36 L.Ed.2d 129 (1973)], against which vague or ambiguous federal enactments must always be measured.

*Id.* at 142–43, 100 S.Ct. at 2583

█ The Supreme Court repeatedly has stated however that exemptions from state tax by implication are permitted only where the taxed activity of the non-Indian occurred on the reservation. *Ramah,* 458 U.S. at 838, 102 S.Ct. at 3398–99, (imposition of New Mexico's gross receipts tax on receipts earned by a non-Indian contractor from the construction of a school for Indian children *on the reservation* was preempted by federal laws). A distinction has been made between the activities of non-Indians as opposed to Indian activities on reservations. Indian activities on reservations cannot be taxed by the state absent congressional consent. *Mescalero,* 411 U.S. at 148, 93 S.Ct. at 1270. Where the non-Indian activities occur on the reservation, a tax exemption by implication requires the balancing of federal interests determined from the relevant federal laws, with tribal interests as revealed by "traditional notions of tribal sovereignty," and with state interests to raise revenues from those to whom it provides governmental services. *Id.; see also* Annotation, *Indians—State or Local Taxation,* 73 L.Ed.2d 1506, 1509–14 (1984).

Relying on *White Mountain, Warren Trading Post, Ramah* and *Mescalero,* the court of appeals reasoned that an Indian tribe in all instances did not shed its constitutionally protected rights of tribal sovereignty and independence upon crossing outside its reservation boundaries. Therefore, the court went on to examine whether preemption by implication occurred when the taxed activity involved a non-Indian law firm assisting an Indian tribe asserting a claim under the Act where the activity, subject to taxation, took place off the reservation. Applying this preemption analysis, the court held that the New Mexico gross receipts tax sought to be imposed by the Revenue Division on the attorney fees paid by the Tribe to Rodey did not significantly impact tribal or federal interests. The Tribe received 90% of the judgments awarded it in the settlement; Rodey received the maximum 10% contracted for as attorney fees. The gross receipts was computed from and paid entirely out of the 10%. The Tribe received no more or less due to the imposition of the tax. Moreover, Rodey performed a considerable amount of its legal services on behalf of the Tribe in New Mexico. The state therefore has a legitimate interest in raising revenues as compensation for the services it provides Rodey, namely the privilege of engaging in business within the state. The

state's interests are strongest when the taxpayer is the recipient of state services. *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 157, 100 S.Ct. 2069, 2083, 65 L.Ed.2d 10 (1980). Thus, the court of appeals concluded that even though the federal preemption by implication analysis applies to this case, the gross receipts tax sought to be imposed by the Revenue Division did not impermissibly infringe on the Tribe's self-government or sovereignty.

■ As noted already, we do not agree that the preemption by implication doctrine applies to the activity of non-Indians occurring off the reservation. The Supreme Court held in *Ramah, White Mountain* and *Warren Trading Post* that the state taxes sought to be imposed on activities of non-Indians that took place on the reservation were implicitly preempted by federal laws. We have been unable to discover any direction by the Supreme Court that preemption by implication, an exception to the general doctrine that preemption must be by an explicit Act of Congress, would apply to activities which occur off reservations. Certain privileges of tribal sovereignty do not extend beyond the political and geographical boundaries of the sovereign. *See Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979). Thus, *tribal activity beyond reservation boundaries would be susceptible to taxation by the state* in the "absence of express federal law to the contrary." *Mescalero,* 411 U.S. at 148, 93 S.Ct. at 1270. In *Mescalero,* the Court held that New Mexico may collect its nondiscriminatory gross receipts tax on a ski resort operated by the Mescalero Apache Tribe on off-reservation land. Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state laws that are otherwise applicable to all citizens of the state. *Id.* at 148–49, 93 S.Ct. at 1270–71. The preemption by implication doctrine does not extend to insulate a non-Indian from state taxes for work performed off the reservation.

■ When reviewing state taxation of activities of non-Indians *off the reservation,* an actual conflict with an express federal provision is required. *Mescalero,* 411 U.S. at 149–50, 93 S.Ct. at 1270–71. Since no federal statute explicitly forbids state taxation of the attorney fees in this case, we decline to extend the preemption by implication doctrine to situations involving off-reservation business activities. We also need not apply the infringement test here, since the impact of the state tax fell solely on Rodey. Therefore, Rodey is not entitled to any refund from the Revenue Division for work it performed in New Mexico in connection with the lawsuit on behalf of the Indian tribes. Whether Rodey is entitled to any refund of the gross receipts tax it paid as a result of legal services performed outside New Mexico is a factual matter to be determined by the trial court upon remand.

The judgment of the trial court granting summary judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

IT IS SO ORDERED.

SCARBOROUGH, C.J., SOSA, Senior Justice, and WALTERS and RANSOM, JJ., concur.