772 P.2d 885

**BIEN MUR INDIAN MARKET CEN-
TER, INC., Protestant–Appellant,**

v.

**TAXATION AND REVENUE DEPART-
MENT, STATE OF NEW MEXICO,
Respondent–Appellee.**

**No. 9983.**

Court of Appeals of New Mexico.

Nov. 29, 1988.

Raymond G. Sanchez, Robert J. Desiderio, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for protestant-appellant.

Hal Stratton, Atty. Gen., Daniel Yohalem and Frank D. Katz, Sp. Asst. Attys. Gen., Santa Fe, for respondent-appellee.

## OPINION

ALARID, Judge.

Bien Mur Indian Market Center, Inc. (Bien Mur) appeals from a decision and order of the Taxation and Revenue Department (Department) affirming the assessment of state gross receipts taxes and interest on those taxes from its sale of cigarettes on the reservation. Bien Mur raises the following issues: (1) whether Bien Mur had a valid agency relationship with Domingo Montoya (Montoya), a Sandia Pueblo Indian, thus barring the imposition of such taxes; (2) whether the Department should be estopped from assessing gross receipts taxes on Bien Mur's sale of cigarettes; (3) whether, if Bien Mur is liable for the payment of gross receipts taxes, the hearing officer erred in imposing a six-year assessment period; and (4) whether the Department's assessment is barred by the doctrines of preemption or infringement on Indian sovereignty. We reverse in part and affirm in part.

### FACTS

In 1975, Montoya, an enrolled member of the Sandia Pueblo, obtained the tribal council's authority to sell cigarettes on the Pueblo. Montoya entered into a written "agency" agreement with Bien Mur, a non-Indian owned, federally licensed trader, whereby Montoya authorized Bien Mur to act as his agent for retail sales of cigarettes on Pueblo lands.

Since 1975, Bien Mur has operated a "smoke shop" as part of its trading post activities. In addition to the sale of Indian arts, crafts and jewelry, it sells cigarettes primarily to non-Indian customers. Since 1975, it has paid neither cigarette excise taxes nor gross receipts taxes on its cigarette sales.

In 1986, after eleven years of business operation, Bien Mur was assessed the sum of $653,114.83 for non-payment of past state gross receipts taxes by the Department. See NMSA 1978, § 7–9–4 (Repl. Pamp.1988). This figure included $419,963.20 gross receipts tax, $191,155.27 interest and $47,996.36 in penalties. The Department also assessed Bien Mur the sum of $2,955,456.91, including taxes, interest and penalty under provisions of the Cigarette Tax Act. NMSA 1978, Section 7–12–1 et seq. (Repl.1986).

Bien Mur protested the assessment and proceeded to a hearing before the Department's hearing officer. After a lengthy hearing, the officer entered an order recommending that the Department not impose tax pursuant to the Cigarette Tax Act and struck the assessment. The officer further noted that the penalty provisions under the gross receipts tax assessment were inappropriate because Bien Mur had acted in reliance on the advice of counsel. The Department agreed and imposed only the amounts for the non-payment of past gross receipts taxes. This appeal is only from that portion of the Department's order assessing state gross receipts tax and interest on the tax from Bien Mur's cigarette sales.

### AGENCY

Because it was allegedly selling as an agent for Montoya, Bien Mur paid neither gross receipts taxes nor taxes pursuant to the Cigarette Tax Act. See Hunt v. O'Cheskey, 85 N.M. 381, 512 P.2d 954 (Ct. App.1973). Bien Mur contends that a valid agency relationship was created between it and Montoya and, therefore, it was not liable for state gross receipts taxes. See Eastern Navajo Indus., Inc. v. Bureau of Revenue, 89 N.M. 369, 552 P.2d 805 (Ct. App.1976), cert. denied, 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 810 (1977); Hunt v. O'Cheskey. However, the hearing officer found that the parties' designation of their relationship as an agency was not controlling and, based on the evidence presented,

the officer determined that the relationship was actually one of licensure.

■ The determination as to the existence of an agency is one of fact. *See Fryar v. Employers Ins. of Wausau*, 94 N.M. 77, 607 P.2d 615 (1980). The presence of an agency relationship must be determined from all the facts and circumstances of the case, together with the parties' conduct and their communications. *Id.; Trans Union Leasing Corp. v. Hamilton*, 93 N.M. 310, 600 P.2d 256 (1979). Here, although Bien Mur and Montoya specifically designated their relationship as that of principal-agent, the manner in which the parties designate their relationship is not controlling. *See Chevron Oil Co. v. Sutton*, 85 N.M. 679, 515 P.2d 1283 (1973); *Ulibarri Landscaping Material, Inc. v. Colony Materials, Inc.*, 97 N.M. 266, 639 P.2d 75 (Ct.App.1981). This court, in reviewing the determinations of an administrative agency, reviews the record as a whole to determine whether the findings are supported by substantial evidence. *Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd.*, 101 N.M. 291, 681 P.2d 717 (1984). Accordingly, the reviewing court must consider not only supporting evidence, but also evidence contrary to the findings. *Trujillo v. Employment Sec. Dep't*, 105 N.M. 467, 734 P.2d 245 (Ct.App.1987); *Tallman v. ABF*, 108 N.M. 124, 767 P.2d 363 (Ct.App.1988), *cert. denied*, 107 N.M. 785, 765 P.2d 758 (1988). This court then determines whether, on balance, the agency's decision is supported by substantial evidence. *Id.*

In determining that no agency relationship existed between Montoya and Bien Mur, the hearing officer reviewed all relevant contracts and heard testimony concerning the nature and operation of the business. While the written agreement between Montoya and Bien Mur indicated that Bien Mur would operate and manage a retail cigarette business for Montoya, as his agent, the actual practice was otherwise. Montoya made no financial contribution to the commencement or operation of the business. All decision-making was in the hands of the Bien Mur president. Bien Mur officials formulated business policies and were responsible for all aspects pertaining to the operation of the business. Monies derived from sales were deposited in bank accounts over which Montoya had no control or authority. Although Montoya could inspect the books and, by virtue of his right to end the relationship, could set forth policy directives, he exercised those rights but once, ten years before the hearing, by objecting to billboard advertising. Originally, Montoya was to receive ten percent of the cigarette sale profits. Subsequently, however, that amount was changed to $1,000 per month, regardless of profits or losses. Montoya was paid that uniform sum each month and had no actual involvement in the operation of the business.

Based on a review of that testimony and a review of the written agreements, we hold that the record as a whole supports the hearing officer's determination that the relationship between Montoya and Bien Mur was in the nature of licensure rather than one of agency. Accordingly, we affirm this portion of the hearing officer's determination.

ESTOPPEL

■ Bien Mur likewise argues that the Department should be equitably estopped from assessing and collecting state gross receipts taxes on its sale of cigarettes. It is undisputed that the Department failed to collect these taxes for the eleven years Bien Mur had operated the "smoke shop." Bien Mur argues that the Department knew it was selling cigarettes and not paying gross receipts taxes. Bien Mur's argument is supported by two former Department secretaries who testified that the Department's tax policy was not to impose taxes on cigarette sales on Indian reservations. No distinction was made in their testimony between cigarette excise tax and gross receipts tax. Bien Mur further argues that through its conduct, the Department intimated that Bien Mur was not subject to taxes on cigarette sales. Moreover, Bien Mur argues that following the United States Supreme Court's decision in *Washington v. Confederated Tribes of Colville*

358

*Indian Reservation,* 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) (upholding the right of the state to tax sales of cigarettes on Indian land where impact fell primarily on non-members of the tribe), Bien Mur's original counsel, Sigrid Olson (Olson), corresponded in writing with the Department's attorney concerning the effect of *Colville* on the Department's tax policy. Gerald Richardson, (Richardson) the Department's attorney, responded orally rather than in writing, and allegedly acknowledged that he was aware of Bien Mur's non-payment of taxes for cigarettes sold on the reservation. Richardson allegedly indicated that there would be no change in the taxation policy, at least until the 1981 legislative session, when the Department would seek legislative approval to revise and revamp its taxing policies. In accordance with the information conveyed to Olson, the Department had tax legislation introduced to modify the Cigarette Tax Act. The legislation, however, was defeated and thus Bien Mur officials believed, based on their attorney's analysis, that the Department policy concerning the taxation of cigarettes sold on the reservation to non-Indians would not change. Contrary to the secretaries' testimony, the Department presented evidence indicating that it was Department policy to assess and collect gross receipts taxes for sales of goods on Indian land.

Bien Mur contends that the doctrine of equitable estoppel bars the state from assessing gross receipts taxes in that: (1) the Department represented, through words and conduct, that sales of cigarettes on Indian lands were not subject to tax; (2) the Department intended Bien Mur to rely on the representation; (3) the Department had knowledge of the essential facts; (4) Bien Mur relied on the representations; and (5) Bien Mur has been prejudiced as a result of its reliance.

■ Generally, the doctrine of equitable estoppel will not be applied against the state. *See Ross v. Daniel,* 53 N.M. 70, 201 P.2d 993 (1949); *In re Ranchers–Tufco Limestone Project Joint Venture,* 100 N.M. 632, 674 P.2d 522 (Ct.App.1983). Ac-

cordingly, in the absence of a statute providing for estoppel, it will not be applied against the state. *United States v. Bureau of Revenue,* 87 N.M. 164, 531 P.2d 212 (Ct.App.1975). This is especially true in cases involving assessment and collection of taxes. *See* Annotation, *Estoppel of State or Local Government in Tax Matters,* 21 A.L.R.4th 573 (1983). Nonetheless, New Mexico has recognized that estoppel against the state should be applied "where right and justice demand it." *United States v. Bureau of Revenue,* 87 N.M. at 166, 531 P.2d at 214; *Silver City Consol. School Dist. No. 1 v. Board of Regents,* 75 N.M. 106, 401 P.2d 95 (1965); *City of Carlsbad v. Neal,* 56 N.M. 465, 245 P.2d 384 (1952). In taxation matters relating to the Department, statutory protections bar action by the Department when the party, adverse to the Department, shows that its compliance or non-compliance was in accordance with the Department's regulations or rulings. *See* NMSA 1978, § 7–1–60 (Repl.Pamp.1988). The Department's rulings, however, must be in writing and personally addressed to the adverse party. *Id.* Thus, equitable estoppel against the Department will be applied if right and justice demand it *only* in those instances where the Department has issued official *written* opinions to the taxpayer stating clearly that the tax was not due. *Kerr–McGee Nuclear Corp. v. Property Tax Div.,* 95 N.M. 685, 625 P.2d 1202 (Ct. App.1980); *Mountain States Advertising, Inc. v. Bureau of Revenue,* 89 N.M. 331, 552 P.2d 233 (Ct.App.1976); *United States v. Bureau of Revenue.* Under those circumstances, the party relying on the Department's representations may properly raise the defense of equitable estoppel against the Department.

Here, however, no written rulings were issued by the Department and, although the Department's attorneys did communicate orally with Bien Mur's counsel regarding the applicability of gross receipts taxes on Bien Mur's cigarette sales, the parties dispute the content of those discussions. This dispute, concerning the nature and content of the oral discussion, highlights the policy for requiring a written ruling

before estoppel will be applied. The rationale followed by courts in disallowing parole evidence is applicable here.

"The written word remains," a genuine and veracious memorial, so far as it goes, of what was actually agreed to. On the other hand, the narrative by a witness of the purported substance of words, spoken many months or even years before, is subject to a very high probability of error, even when recounted by a disinterested person.... Moreover, the witness who recounts the oral bargaining seldom is, in fact, disinterested. [Footnote omitted.]

C. McCormick, *Law of Evidence*, ch. 24, § 210 at 428 (1954).

While Bien Mur operated its business on the reservation, the Department never issued a written ruling indicating Bien Mur was not responsible for the payment of gross receipts taxes on cigarette sales. Therefore, under the terms of Section 7–1–60, equitable estoppel cannot be applied here.

Upon request of this court, both parties submitted supplementary briefs on the relevance, if any, of G.R. Regulation 3(F)–7 (1969) (Regulation), and its subsequent amendment. We have determined, however, that the Regulation and its subsequent amendment had no effect here.

Inherent in an estoppel theory is detrimental reliance. *Vickers v. North Am. Land Dev., Inc.*, 94 N.M. 65, 607 P.2d 603 (1980). Bien Mur did not argue that its failure to pay state gross receipt taxes was based on its reliance on the Regulation and its amendment. In fact, Bien Mur merely argued that the Department's policy had been not to impose gross receipts taxes on the sale of cigarettes sold to non-Indians on the reservation and that the amendment "supports Bien Mur's argument that the Department should be estopped." In the absence of an allegation of reliance, we will not address the Regulation or its amendment.

TIME LIMITATION

Bien Mur further argues that if it is responsible for the payment of past gross receipts taxes, its liability should be limited to the general three-year limitation period provided under NMSA 1978, Section 7–1–18(A) (Repl.Pamp.1988), and not the six-year limitation imposed pursuant to Section 7–1–18(D). We agree.

Section 7–1–18(A) prohibits the Department director from assessing a tax after three years from the end of the year in which payment of the tax was due. Additional, lengthier limitation periods are provided pursuant to Sections 7–1–18(B), (C) and (D). These lengthier time limitations are penalizing in nature depending solely on the degree of the taxpayer's culpability in failing to file returns, report income or pay taxes.

Through the testimony of the Department's secretaries, who established departmental policy during much of the time in question, Bien Mur demonstrated that the Department had a policy of not taxing the sale of cigarettes sold on Indian lands. During that time, the Department, albeit mistakingly, believed it had no authority to impose taxes. This policy was widely known, although it was never communicated in writing by the Department to Bien Mur. When Bien Mur corresponded with the Department's legal counsel in 1980 to ascertain whether departmental policy concerning taxation on Indian lands was to change, Bien Mur was told that no change was imminent and that the legislature would soon address the issue. Indeed, legislation concerning the cigarette excise tax, as opposed to gross receipts tax, was introduced in the next legislative session, but was subsequently defeated. Because there was no legislative change, Bien Mur, relying on advice of counsel, acted reasonably in expecting that the Department's policy would not change. While this and other evidence submitted by Bien Mur in support of its estoppel argument is insufficient to apply the doctrine of equitable estoppel, *see* Section 7–1–60, it is properly considered in determining the degree of Bien Mur's responsibility. Under the facts and circumstances here, it is inappropriate to impose the penalty provisions of the gross receipts assessment, and therefore taxes should not have been assessed beyond the three-year

general limitation. Accordingly, we remand for a recalculation of taxes and interest for the three-year general assessment period rather than the six-year period imposed.

PREEMPTION

■ Lastly, Bien Mur argues that the assessment of state gross receipts taxes on its cigarette sales is further barred by the doctrines of preemption and infringement on Indian sovereignty. Federal and tribal interests suggest two independent but related barriers to the exercise of state authority over commercial activity on reservations: (1) when state authority is preempted by federal law; or (2) when state authority infringes on the right of reservation Indians to make their own law. *Ramah Navajo School Bd., Inc. v. Bureau of Revenue*, 458 U.S. 832, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982).

Historically, federal preemption has been limited to those situations where Congress has explicitly and expressly announced an intention to preempt state action. Within the past two decades, however, the Supreme Court has acknowledged an exception to this general rule concerning Indian reservations and their members. Preemption by implication, or presumed preemption, has been found where the activity sought to be taxed or regulated by a state is subject to a federal regulatory scheme that is so comprehensive or pervasive that it precludes the imposition of additional burdens by the state and forms a barrier to the assertion of state taxing authority. *See Ramah Navajo School Bd., Inc. v. Bureau of Revenue; White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980); *Warren Trading Post Co. v. Arizona State Tax Comm'n*, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965). Such a federal scheme leaves the state with no duties or responsibilities with respect to reservation Indians. *Ramah Navajo School Bd., Inc. v. Bureau of Revenue; Warren Trading Post Co. v. Arizona State Tax Comm'n.* If the exercise of state authority over commercial activity on the reservation is not preempted by federal law, however, then state taxes

may be imposed on such activity unless the imposition of those taxes infringes on the right of reservation Indians to make their own laws. *See Ramah Navajo School Bd., Inc. v. Bureau of Revenue; Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959).

In determining whether the imposition of state gross receipts taxes on the sale of cigarettes on a reservation is preempted by federal law, we need only determine whether application of state law would "impair a right granted or reserved by federal law." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114 (1973). We begin with an analysis of those federal regulations, if any, which address the same activity. After determining the applicability of federal policy, we must determine whether the state's imposition of state gross receipts taxes interferes with that federal policy. If it does not interfere, the inquiry ends and the state tax is enforceable. If it does interfere, then we must determine whether the federal legislation was so comprehensive or pervasive as to preclude the assertion of New Mexico's taxing authority. *See New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983); *Rodey, Dickason, Sloan, Akin & Robb, P.A. v. Revenue Div. of the Dep't of Taxation and Revenue*, 107 N.M. 399, 759 P.2d 186 (1988) (upholding imposition of tax but denying the applicability of preemption by implication analysis under the facts of the case). A sufficiently strong state interest may, however, validate a state's assertion of authority even though federal and tribal interests are somewhat impaired. *New Mexico v. Mescalero Apache Tribe; Puyallup Tribe, Inc. v. Department of Game of Washington*, 433 U.S. 165, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977).

Here, Bien Mur presented no evidence regarding federal legislation preempting the state's authority to tax. More importantly, the doctrine of presumption of federal preemption generally does not apply to the sale of goods by non-Indians to non-Indians on the reservation. *Cf. Rice v. Rehner*, 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed. 2d 961 (1983) (presumption of preemption

exists if area of asserted authority is where tradition has recognized tribal sovereign immunity or inherent self-government). Accordingly, the state is not preempted from collecting state gross receipts taxes on the sale of cigarettes to non-Indians on the reservation.

TRIBAL SOVEREIGNTY

■ The assessment of state gross receipts taxes on Bien Mur's cigarette sales does not infringe on the tribe's inherent sovereignty. A state does not infringe on the right of reservation Indians to make their own laws and to be ruled by them merely because the result of imposing state taxes on non-members will be to deprive the tribe of revenues it is currently receiving. *Washington v. Confederated Tribes of Colville Indian Reservation.* While it is true that the tribe has the power to tax or to grant the privilege of engaging in business on the reservation, the state, nonetheless, has the power to tax business conducted within the state. *See Mescalero Apache Tribe v. O'Cheskey,* 439 F.Supp. 1063 (D.N.M.1977), *aff'd* 625 F.2d 967 (10th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981). This is particularly true where the burden of the tax does not fall on the tribe, but rather, as here, on the non-Indian doing business on the reservation. *See California Bd. of Equalization v. Chemehuevi · Indian Tribe,* 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985); *Tiffany Constr. Co. v. Bureau of Revenue,* 96 N.M. 296, 629 P.2d 1225 (1981); *G.M. Shupe, Inc. v. Bureau of Revenue,* 89 N.M. 265, 550 P.2d 277 (Ct.App. 1976).

Here, no evidence was presented to show that the imposition of the gross receipts tax on Bien Mur's sale of cigarettes to non-Indians would infringe on the sovereignty of the Sandia Pueblo. Moreover, no evidence was presented to show that the imposition of the state tax would have a direct and substantial negative economic impact on the tribe. *See e.g., Washington v. Confederated Tribes of Colville Indian Reservation.* Accordingly, we hold that the state's assessment of gross receipts taxes against Bien Mur does not infringe on the inherent sovereignty of the Sandia Pueblo.

The order and decision of the hearing officer is affirmed, excepting that portion allowing a six-year assessment rather than the general three-year assessment. We remand to the Department for recalculation of the gross receipts tax assessment and interest based on a three-year limitation.

IT IS SO ORDERED.

DONNELLY, C.J., and APODACA, J., concur.