[No. B038437. Second Dist., Div. Two. Nov. 6, 1989.]

PROGRAMMING-ENTERPRISES, INC., Plaintiff and Respondent, v.
CITY OF LOS ANGELES, Defendant and Appellant.

COUNSEL

James K. Hahn, City Attorney, Richard A. Dawson, Assistant City Attorney, and Michael L. Klekner, Deputy City Attorney, for Defendant and Appellant.

William M. Poindexter, Lee C. Heiman and Poindexter & Doutre for Plaintiff and Respondent.

---

## OPINION

**ROTH, P. J.**—The City of Los Angeles appeals from a judgment in favor of respondent Programming-Enterprises, Inc., awarding a refund of business taxes for the years 1982 through 1986, in the sum of $128,404.90 plus prejudgment interest.

The facts are not in dispute. The city's business license ordinance imposes a tax on persons engaged in business in the city; the amount of tax is based on the taxpayer's gross receipts. Respondent is an employment agency doing business under the fictitious name Mini-Systems Associates. It specializes in placing engineers and computer programmers. Its gross receipts, insofar as this case is concerned, derive from its activities in placing workers in temporary employment. The ordinance imposes a business tax of 0.35 percent on the gross receipts of several types of businesses, including "temporary help agencies." (L. A. Mun. Code, § 21.189.1(a).)[1] A temporary help agency is defined as "any person engaged in the business of supplying *his employees* to others on a temporary basis." (§ 21.189.1(b), italics added).) Various tax rates are applied to other described types of businesses. The tax rate on gross receipts of businesses not specifically described is 0.50 percent. (§ 21.190(a); see generally *Times Mirror Co.* v. *City of Los Angeles* (1987) 192 Cal.App.3d 170, 174-175 [237 Cal.Rptr. 346]; *Marsh & McLennan of Cal., Inc.* v. *City of Los Angeles* (1976) 62 Cal.App.3d 108, 111-112 [132 Cal.Rptr. 796].)

Mini-Systems offers each of its temporary workers a choice of working either as Mini-Systems' employee or as an independent contractor. The parties are in agreement on the business tax consequences of the former arrangement. The tax consequences of the latter arrangement are the sole issue in this case.

For clarity, throughout this opinion we shall employ a hypothetical illustration which accurately reflects the undisputed facts.

Mini-Systems' office is situated within the City of Los Angeles. Mini-Systems keeps on file the curricula vitae of numerous computer program-

---

[1] All further section references are to the Los Angeles Municipal Code.

mers, engineers, and technical workers. Suppose Aeroshear, an aerospace firm located in Torrance—outside the City of Los Angeles, tells Mini-Systems it needs two engineers on a temporary basis. Mini-Systems sends Aeroshear several resumes, including those of engineers Smythe and Jones. After interviewing several candidates, Aeroshear notifies Mini-Systems it wants Smythe and Jones. Mini-Systems and Aeroshear enter written agreements, in the form of Aeroshear purchase orders, covering Smythe's and Jones's work at Aeroshear. These agreements provide that Aeroshear will pay Mini-Systems $50 per hour for each hour worked. Smythe and Jones are not parties to these agreements.

Mini-Systems is satisfied that both Smythe and Jones are sufficiently reliable to be retained as independent contractors rather than employees, if they wish. Mini-Systems thus asks each whether he prefers to work as Mini-Systems' employee or as an independent contractor. Mini-Systems does not consult Aeroshear on this question; according to Mini-Systems' evidence, "it makes no difference to [Aeroshear] whether it is an independent contractor or employee." Insofar as this case is concerned, working as *Aeroshear's* employee is not an option made available to Smythe or Jones by either Aeroshear or Mini-Systems.

Smythe tells Mini-Systems he prefers to work as its employee. Mini-Systems then hires Smythe as its employee, entering into a written employment agreement with him whereby it agrees to pay him a wage of $42 per hour worked.[2] Aeroshear is not a party to this agreement. Mini-Systems obtains worker's compensation insurance covering Smythe and, as his employer, withholds employment taxes from his paycheck.

Jones, however, tells Mini-Systems he prefers to work as its independent contractor. Jones and Mini-Systems then enter into a written agreement whereby Mini-Systems engages Jones, as a self-employed independent contractor, to provide consulting services to Aeroshear, for which Mini-Systems agrees to pay Jones $42 per hour worked, without withholding taxes, and Jones agrees to pay his own taxes. Aeroshear is not a party to this agreement either.

Mini-Systems pays both Smythe and Jones weekly or biweekly, often before Mini-Systems has been paid by Aeroshear.

There is no dispute over the business tax due on account of Mini-Systems' arrangement with Smythe. With respect to that arrangement, Mini-Systems

---

[2]This figure is based upon evidence that Mini-Systems typically pays the worker an amount equal to 85 percent of what Mini-Systems receives.

is, under the taxing ordinance, a temporary help agency: it supplies Smythe, its employee, to Aeroshear on a temporary basis. For each hour Smythe works, Mini-Systems is subject to a 0.35 percent tax on the $50 it receives from Aeroshear—with one crucial refinement.

The refinement is this: for reasons discussed fully *infra,* the City of Los Angeles is not permitted to tax Mini-Systems' extraterritorial business activities, and Smythe labors at Aeroshear in Torrance, outside the Los Angeles city limits. Consequently the $50 Mini-Systems receives for each hour Smythe works must be allocated between that portion fairly attributable to activities performed by Mini-Systems inside the city (principally its recruitment effort and its bookkeeping and payroll activities) and that portion attributable to activities performed by its employees outside the city (Smythe's labors). Only the former may be taxed. To make the required allocation, the city promulgated a rule, known as City Clerk's Ruling No. 15, fixing this allocation at 20 percent inside the city and 80 percent outside the city, for every business located within the city which derives gross receipts due to work performed outside the city, "in the absence of substantial information to the contrary."[3]

Hence for each hour Smythe works, the city imposes on Mini-Systems a 0.35 percent tax on 20 percent of the $50 it receives from Aeroshear. The tax on each $50 is thus 3.5 cents. Mini-Systems agrees this is the correct tax.

The city proposes a different tax treatment, however, of Mini-Systems' gross receipts in connection with Jones's work. Mini-Systems does not agree with the city. The dispute has three aspects.

*First.* The city refuses to classify Mini-Systems' gross receipts with respect to Jones as receipts of a temporary help agency. The ordinance defines a temporary help agency as "any person engaged in the business of supplying *his employees* to others on a temporary basis," and its gross receipts are taxed at the rate of 0.35 percent. (§ 21.189.1(a), (b), italics added.) Because Jones is not Mini-Systems' employee, the city instead classifies Mini-Systems' gross receipts on account of Jones's labors under the ordinance's "catchall" classification, section 21.190(a), which imposes a higher tax rate

---

[3] Mini-Systems maintained satellite offices outside the city, and some of the temporary employees were recruited by these offices. All accounting work was done at the main office inside the city. In 1985 Mini-Systems demonstrated to the city's satisfaction that the presumed 20/80 allocation fixed by ruling No. 15 should be altered to 15/85 with respect to gross receipts of Mini-Systems based on the labors of those temporary employees it had recruited through its satellite offices outside the city. The parties have agreed that this revised allocation governs all tax years in this litigation. Having noted this fact, to avoid unnecessary confusion we will in this opinion refer to the apportionment as 20/80.

of 0.50 percent on the gross receipts of businesses not specifically described elsewhere. Mini-Systems contends this classification is erroneous under the ordinance, and if not erroneous, it is irrational and therefore deprives Mini-Systems of equal protection of the law.

*Second.* The city refuses to apply the 20/80 apportionment rule to the $50 Mini-Systems receives on account of each hour of Jones's work, and insists on taxing the entire $50 rather than only 20 percent of it, even though Jones, like Smythe, labors outside the city, because Jones is not Mini-Systems' employee. Mini-Systems contends apportionment is required.

Thus the city claims, with respect to Mini-Systems' arrangement with Jones, 0.50 percent of each $50: a tax of 25 cents. (The tax with respect to the Smythe arrangement, as stated earlier, is only 3.5 cents.)

*Third.* Though it taxes Mini-Systems at the 0.50 percent "catchall" rate, the city refuses to give Mini-Systems the benefit of a provision in the "catchall" portion of the ordinance—section 21.190(c)(6)—which requires, in counting Mini-Systems' gross receipts, *exclusion* of "Receipts of persons acting as agents or brokers for other persons to be paid over to such other persons . . . ." Mini-Systems contends that when Aeroshear pays it $50, it receives $42 of that sum *as Jones's agent* and in that capacity pays the $42 over to him; it receives for its own account only the remaining $8. Thus, Mini-Systems contends, the $42 cannot be included in its gross receipts, and its gross receipts subject to tax are only $8. If the city is permitted to deny it the lower 0.35 percent rate under the temporary help agency classification, and also to deny it the benefit of the 20/80 apportionment, Mini-Systems contends, its tax should be 0.50 percent of $8, or 4 cents.

The parties stipulated Mini-Systems paid the taxes demanded by the city, claimed refunds, and exhausted its administrative remedies; they further agreed the question of refund was properly before the court for decision. The trial court sustained Mini-Systems' position on the third issue and ordered a refund calculated on that basis. It also sustained Mini-Systems' position on the second issue, but did not calculate the refund on that basis.[4] The court rejected Mini-Systems' position on the first issue. The city appeals.

---

[4] The amount of the refund sought was approximately the same under both theories, because under the apportionment theory Mini-Systems sought to exclude 85 percent of its gross receipts as allocable to out-of-city work, and under the agency theory it sought to exclude 85 percent of its gross receipts as sums it received as agent for the independent contractors. (See fns. 2 and 3, *ante.*)

We sustain the city's position on all three issues. It is expedient to discuss them in the following order. (1) Mini-Systems does not act as Jones's agent, and the business tax is correctly imposed on the full $50, not just the $8 remaining in Mini-Systems' hands after it pays Jones. (2) Mini-Systems is not entitled to 20/80 apportionment of the $50 received for Jones's work. (3) The 0.50 percent tax rate is the correct rate under the ordinance and its imposition does not deprive Mini-Systems of equal protection of the law.

*1. Mini-Systems is not Jones's agent within the meaning of section 21.190(c)(6), so it cannot exclude from its gross receipts an amount equal to the amount it pays Jones.*

Section 21.190(c)(6) requires, in counting a taxpayer's gross receipts, exclusion of "Receipts of persons acting as agents or brokers for other persons to be paid over to such other persons . . . ." █ Mini-Systems contends that when Aeroshear pays it $50, it receives $42 of that sum as Jones's agent and in that capacity pays the $42 over to him; it receives for its own account only the remaining $8 and can be taxed only on that amount.

This contention does not conform to the contractual arrangements Mini-Systems set up with Aeroshear and Jones. Aeroshear has no contract with Jones; it owes the $50 only to Mini-Systems and owes Jones nothing. Therefore Aeroshear's remittances to Mini-Systems cannot be considered payments Aeroshear makes to Jones through his agent; Mini-Systems receives the $50 for its own account. The lengthy and comprehensive written agreement between Mini-Systems and Jones nowhere states or suggests that Jones appoints Mini-Systems as his agent or that Mini-Systems agrees to act for him as his agent. Under this agreement, Mini-Systems' promise to pay Jones is its own obligation, not that of Aeroshear. (See *City of Los Angeles* v. *Sherwood* (1978) 85 Cal.App.3d 347, 351 [149 Cal.Rptr. 298].) When it makes this payment to Jones, Mini-Systems is not remitting to a principal funds it holds as his agent.

Section 21.190(c)(6) appears to apply, rather, when a taxpayer receives monies not for its own use and benefit but rather as an intermediary between two parties dealing with each other. (See *City of Los Angeles* v. *Clinton Merchandising Corp.* (1962) 58 Cal.2d 675, 681-682 [25 Cal.Rptr. 859, 375 P.2d 851]; *City of Los Angeles* v. *Meyers Bros. Parking System, Inc.* (1975) 54 Cal.App.3d 135 [126 Cal.Rptr. 545].) For example, a travel agent or a stockbroker could apparently exclude from their gross receipts sums received from clients to purchase airline tickets or investment securities, respectively. (See *City of Los Angeles* v. *Sherwood, supra,* 85 Cal.App.3d at

pp. 350-351; § 21.189.1(c).) Sums the taxpayer pays out pursuant to its own obligations cannot be subtracted from its gross receipts subject to tax. (*City of Los Angeles* v. *Security Systems, Inc.* (1975) 46 Cal.App.3d 950, 954 [120 Cal.Rptr. 600]; *Independent Casting-Television, Inc.* v. *City of Los Angeles* (1975) 49 Cal.App.3d 502, 507-509 [122 Cal.Rptr. 416].) This distinction is consistent with the ordinance's general definition of "gross receipts" as including "the total amount charged or received for the performance of any act, service or employment, of whatever nature it may be . . . *without any deduction therefrom on account of* the cost of the property sold, the cost of materials used, *labor or service costs,* interest paid or payable, losses *or any other expense whatsoever* . . . ." (§ 21.00(a), italics added.)[5]

*2. Mini-Systems' gross receipts in connection with Jones's work are not subject to apportionment.*

For constitutional reasons, when taxing a business located within the city, the city may not tax that portion of the business's gross receipts which is derived from or fairly attributable to its business activities carried on outside the city limits. (*City of Los Angeles* v. *Shell Oil Co.* (1971) 4 Cal.3d 108, 119 [93 Cal.Rptr. 1, 480 P.2d 953].) ■ In the city's view, Mini-Systems' entire gross receipts based on Jones's work are fairly allocable to business activities conducted by Mini-Systems within the city limits because in connection with those receipts Mini-Systems has neither property nor employees located outside the city. Jones works outside the city, of course, but he is a self-employed consulting engineer, not Mini-Systems' employee.

The city is correct. ■ Apportionment is constitutionally required whenever failure to apportion would "operate to unfairly discriminate against intercity businesses by subjecting such businesses to a measure of taxation which is not fairly apportioned to the quantum of business actually done in the taxing jurisdiction." (*City of Los Angeles* v. *Shell Oil Co., supra,* 4 Cal.3d 108, 124.) The city's tax ordinance also calls for such apportionment. (§ 21.190.1(d); see §§ 21.189.2(c), 21.15(h).) In *Shell* the Supreme Court identified two constitutional infirmities of an unapportioned tax. First, the potential burden of multiple taxation by different cities can put intercity businesses at a competitive disadvantage. (See 4 Cal.3d at pp. 118, 119, 123.) Secondly, the taxation of "an event" occurring outside the city constitutes the impermissible extraterritorial application of local laws. (See *id.* at p. 120.)

---

[5] It is thus unnecessary to pass on the city's contention that section 21.190(c)(6)(ii), which commands the inclusion in gross receipts of sums a taxpayer receives in "compensation or reimbursement for salaries" of its "employees" (as "employees" is defined in Labor Code section 3350 et seq.), is applicable notwithstanding Jones's status as an independent contractor.

At bench, the taxation by the City of Los Angeles of the entirety of Mini-Systems' $50 gross receipts from its arrangement with respect to Jones does not implicate either constitutional restriction. Mini-Systems is not subjected to the possibility of double taxation on the same gross receipts, for it has not been suggested that the City of Torrance, under a business tax ordinance of its own, could tax the $50 Mini-Systems receives from Aeroshear in connection with the Jones arrangement; Mini-Systems has no presence in Torrance. Nor is Los Angeles attempting to tax business activities carried on outside its borders, for it is not taxing Jones's activities, only those of Mini-Systems.

The cases on apportionment are numerous, but none is on point. Most of the cases requiring apportionment for taxpayers providing services involve the business of transporting passengers or cargo both inside and outside the taxing jurisdiction. (*Willingham Bus Lines, Inc.* v. *Municipal Court* (1967) 66 Cal.2d 893 [59 Cal.Rptr. 618, 428 P.2d 602] (passenger transportation); *City of Los Angeles* v. *London Towne Livery Service, Ltd.* (1979) 97 Cal.App.3d 814 [159 Cal.Rptr. 94] (same); *City of Los Angeles* v. *Drake* (1961) 195 Cal.App.2d 744 [16 Cal.Rptr. 103] (same); *City of Los Angeles* v. *Carson* (1960) 181 Cal.App.2d 540 [5 Cal.Rptr. 356] (same); *Security Truck Line* v. *City of Monterey* (1953) 117 Cal.App.2d 441 [256 P.2d 366] (fish hauling); see *Ferran* v. *City of Palo Alto* (1942) 50 Cal.App.2d 374 [122 P.2d 965] (laundry).) So far as these opinions reveal, the work performed outside the taxing jurisdiction was always rendered by the taxpayer's own employees as opposed to independent contractors.

Other cases, involving goods—in some of which apportionment was required and in others not—also do not suggest that the extraterritorial activities of the taxpayer were carried on by anyone other than the taxpayer's own employees. (*General Motors Corp.* v. *City of Los Angeles* (1971) 5 Cal.3d 229 [95 Cal.Rptr. 635, 486 P.2d 163] (manufacture and sale of motor vehicles); *City of Los Angeles* v. *Shell Oil Co., supra,* 4 Cal.3d 108 (sale of gasoline); *Carnation Co.* v. *City of Los Angeles* (1966) 65 Cal.2d 36 [52 Cal.Rptr. 225, 416 P.2d 129] (manufacture and sale of foodstuffs); *City of Los Angeles* v. *Belridge Oil Co.* (1957) 48 Cal.2d 320 [309 P.2d 417] (sale of petroleum products); *City of Los Angeles* v. *Belridge Oil Co.* (1954) 42 Cal.2d 823 [271 P.2d 5] (same); *Times Mirror Co.* v. *City of Los Angeles* (1987) 192 Cal.App.3d 170, 186-189 [237 Cal.Rptr. 346] (publication and sale of newspapers); *Universal Consolidated Oil Co.* v. *City of Los Angeles* (1962) 202 Cal.App.2d 771 [21 Cal.Rptr. 61] (production and sale of crude oil).)

*Irvine Co.* v. *McColgan* (1945) 26 Cal.2d 160, 167 [157 P.2d 847, 167 A.L.R. 934] contains language to the effect that a corporation is not entitled

to apportionment of state franchise tax for business conducted outside the state unless that business is done *"by* the corporation acting through its officers or agents." (26 Cal.2d at p. 167, original italics.) This decision supports the city's position, but it is not controlling because the constitutional dimensions of apportionment differ when interstate commerce is implicated. (See *City of Los Angeles* v. *Shell Oil Co., supra,* 4 Cal.3d 108, 119; *General Motors Corp.* v. *City of Los Angeles, supra,* 5 Cal.3d 229, 241, fn. 13.)

The parties have debated at length the case of *Hospital Medical Collections, Inc.* v. *City of Los Angeles* (1976) 65 Cal.App.3d 46 [135 Cal.Rptr. 147]. This decision is of little value on the apportionment issue because it focused on what is includible in the taxpayer's gross receipts rather than what is allocable to nonlocal activity. To the limited extent the opinion does discuss apportionment (see 65 Cal.App.3d at pp. 53-55), it supports the city, for it found the city was not attempting to tax outside its jurisdiction when it included in the gross receipts of a Los Angeles collections bureau the entire commission earned from its clients, even though it had contracted with, and shared its commissions with, out-of-town collection firms which performed some of the collection activities as independent contractors.

Thus none of these cases addressed the question at bench: whether activities which the taxpayer arranges for, and from which it benefits, but which are carried on not by the taxpayer's employees but rather by independent persons with whom the taxpayer contracts, must be apportioned to the extent those independent persons conduct their activities outside the taxing jurisdiction.

Though unguided by precedent, we have no difficulty answering this question. The extraterritorial business activities of which apportionment is required are activities carried on by the taxpayer, i.e, the corporation and its employees and agents, and not activities carried on by others, even though the taxpayer may have advantageous contracts with those others. Mini-Systems has no employees carrying out its affairs in Torrance; only Jones labors in Torrance, and he is an independent, self-employed consulting engineer. Jones's activities are not those of Mini-Systems, and so no apportionment is required.

It avails Mini-Systems nothing to point out that in substance Jones and Smythe are indistinguishable. The contractual formalities set up by Mini-Systems have substantial legal consequences—this was undoubtedly Mini-Systems' reason for creating these arrangements in the first place—and are not to be disregarded. By making Jones an independent contractor, Mini-

Systems undoubtedly procured for itself significant costs savings, not the least of which were tax savings; it also by this arrangement made it possible for Jones to reap like advantages. Mini-Systems also used the distinction as a marketing strategy: its promotional brochure describes persons like Smythe as "members of our engineering and computer staff who work for limited durations at the client's site under client direction" and those like Jones as "Consulting Technical Personnel . . . the elite members of the technical community whose high level of expertise is available from our extensive pool of consulting associates."

Mini-Systems is in no position, therefore, to demand that the contractual arrangement it created be disregarded, as lacking in substance, by the one public entity under whose taxing system that arrangement had consequences Mini-Systems finds disadvantageous. As was aptly observed in *Independent Casting-Television, Inc.* v. *City of Los Angeles* (1975) 49 Cal.App.3d 502, 508-509 [122 Cal.Rptr. 416], "Nor can Taxpayer escape the tax consequences of the plan of operation adopted by it because the plan is sound in a business sense. Tax consequences follow what is done irrespective of motivation. If good business management dictates that a particular mode of operation be employed, Taxpayer is in no position to complain that the economies of operation attained by that mode are offset to a degree by the tax which the law imposes upon it." (See also *City of Los Angeles* v. *Olson Farms, Inc.* (1983) 142 Cal.App.3d 527, 531 [191 Cal.Rptr. 485].)

*3. Application of the higher 0.50 percent tax rate is correct under the ordinance and does not deprive Mini-Systems of equal protection of the laws.*

■ Mini-Systems is not entitled under the taxing ordinance to have its gross receipts taxed at the lower 0.35 percent rate applicable to temporary help agencies because its operations, with respect to Jones—who is not its employee—do not bring it within the ordinance's definition of temporary help agency: "any person engaged in the business of supplying *his employees* to others on a temporary basis." (§ 21.189.1(b), italics added).)

This distinction between the tax rates applied to Mini-Systems' gross receipts with respect to Smythe and Jones does not constitute an unconstitutional arbitrary classification. We repeat our remarks in *City of Los Angeles* v. *London Towne Livery Service, Ltd., supra,* 97 Cal.App.3d at page 819: "[A]n attack upon a tax classification based upon a claim that equal protection has been violated is a most difficult enterprise.' [Citation.] The ordinance carries a presumption of constitutionality which can be overcome only by strong evidence that the classification oppressively discriminates

against a particular person or group." Mini-Systems has demonstrated no oppressive discrimination. As we have already observed, the manner in which a business chooses to structure its operations often has significant tax consequences.

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion. Costs to appellant.

Gates, J., and Fukuto, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 31, 1990. Broussard, J., and Kaufman, J., were of the opinion that the petition should be granted.