861 P.2d 288

**CARLSBERG MANAGEMENT COMPANY, Petitioner–Appellant,**

v.

**STATE of New Mexico, TAXATION AND REVENUE DEPARTMENT, Respondent–Appellee.**

**No. 13511.**

Court of Appeals of New Mexico.

Sept. 15, 1993.

Joseph L. Werntz, Mark A. Glenn, Moses, Dunn, Beckley, Espinosa & Tuthill, P.C., Albuquerque, for petitioner-appellant.

Tom Udall, Atty. Gen., Bruce J. Fort, Asst. Atty. Gen., Santa Fe, for respondent-appellee.

## OPINION

APODACA, Judge.

The New Mexico Taxation and Revenue Department (Department) filed a motion for rehearing after the filing of our opinion in this appeal on July 9, 1993. Although we have denied the motion for rehearing, our previous opinion filed July 9, 1993 is withdrawn and the following opinion is substituted in its place.

Carlsberg Management Co. (Taxpayer) appeals an administrative decision of the Department holding that certain funds it received were gross receipts taxable under NMSA 1978, § 7–9–4 (Repl.Pamp.1990), and assessing taxes and penalties. Taxpayer argues that the money it received as reimbursement for on-site employee expenses was not taxable because (1) Taxpayer was an agent for the property owner, RDI Corp. (Owner), or, alternatively (2) the employees were third-party beneficiaries under the contract between Taxpayer and Owner. We agree that Taxpayer received the money as an agent and reverse. Thus, we need not address Taxpayer's third-party beneficiary theory.

### FACTS

Taxpayer is a property management company that manages a 116–unit apartment complex for Owner. Rents at the property are subsidized by the Farmers Home Administration (FmHA), a federal agency. Taxpayer manages the property pursuant to two "Management Agree-

ments" (Agreements) between Taxpayer and Owner. Taxpayer claims neither it nor Owner could negotiate because FmHA mandates the form of the Agreements. The Department does not deny this claim.

The Agreements are identical except that one is dated 1986 and the other is dated 1988. They define Owner as "Owner" and Taxpayer as "Agent." The Agreements detail Taxpayer's duties regarding maintenance, compliance with relevant laws, purchases, and all aspects of Taxpayer's management of the property. Owner retains virtually total supervisory control over Taxpayer. For example, although Taxpayer is authorized to buy materials, Taxpayer must receive Owner's prior approval and, if the purchase is more than $2,000, the approval must be in writing.

The Agreements authorize Taxpayer to hire employees to manage and operate the property. Employees who work at the property are paid by Taxpayer, who is then reimbursed, dollar for dollar, with no fee or mark-up, by Owner. Taxpayer treated the reimbursements as an offset for expenses, not as revenue. The Agreements state:

> [P]ersonnel will be employees of [Taxpayer] and not the Owner, and will be hired, paid, supervised, and discharged by [Taxpayer]. Site employee salaries will be paid by [Taxpayer] directly from the Owner's General Operating Account. This account will also reimburse [Taxpayer] for Workers Compensation, Social Security taxes, and other taxes normally paid by the employer dealing with wages.

The Agreements also specified that Owner was liable for all of the property's costs, expenses, accounts, and finances, and Taxpayer had "no obligation, responsibility or liability to fund authorized project costs, expenses, or accounts other than those funds generated by the project itself or provided to the project or to [Taxpayer] by Owner."

Taxpayer must also comply with a Management Plan, referred to in the Agreements. The Plan spells out exactly how many people to hire for each on-site task and how much to pay them. The Plan also describes in detail the duties of certain employees. The Plan specifies how the apartments are to be managed, including advertising, determining and collecting rental fees, and resolving complaints. Finally, the Plan states that Owner's president, William Geary, has "absolute authority" in making decisions regarding the apartment complex.

In 1990, the Department audited Taxpayer's financial records and determined that the payroll expense reimbursements for on-site employees was income for which Taxpayer had not paid gross receipts taxes. Taxpayer protested the assessment. After a hearing, the protest was denied.

## DISCUSSION

### I. *Standard of Review.*

■ This Court will reverse the Department's decision if it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7–1–25(C) (Repl.Pamp.1990). We view the evidence in the light most favorable to the agency's decision to determine whether the decision is supported by substantial evidence in the record as a whole. *Wing Pawn Shop v. State Taxation & Revenue Dep't*, 111 N.M. 735, 739, 809 P.2d 649, 653 (Ct.App.1991). In determining whether substantial evidence supports the decision, this Court must also consider the evidence that detracts from the agency's findings. *Id.*

■ The agency's assessment of taxes and penalties is presumed correct. NMSA 1978, § 7–1–17(C) (Repl.Pamp.1990); *see also Wing Pawn Shop*, 111 N.M. at 741, 809 P.2d at 655. The Taxpayer has the burden of overcoming the presumption. *Wing Pawn Shop*, 111 N.M. at 741, 809 P.2d at 655. Additionally, "it is presumed that all receipts of a person engaging in business are subject to the gross receipts tax." NMSA 1978, § 7–9–5 (Repl. Pamp.1990); *see also* NMSA 1978, § 7–9–3(F) (effective until July 1, 1993) (Repl. Pamp.1990) (broadly defining "gross receipts").

■ There is no statutory exclusion or exemption from imposition of the gross receipts tax for money received as reimbursement for business expenses. However, during the tax periods at issue in this appeal, the Department concedes it had a policy excluding from gross receipts those funds a taxpayer received as an agent for another. An agency relationship existed under the Department policy if the agent was able to bind the principal to a bargain made by the agent. The Department later established a regulation, effective December 14, 1988, incorporating this policy and adding the requirement that the agency relationship be disclosed. Taxpayer argues that, because it received the reimbursements as an agent from Owner, those receipts are not taxable. The Department contends Taxpayer did not prove Owner controlled the employees or was obligated to pay them; thus, the Department concludes, Taxpayer failed to prove it received the reimbursements as an agent and the funds are presumptively subject to the gross receipts tax. We disagree.

## II. *Determination of Agency Relationship.*

■ We agree with the Department that a principal's control over the agent is the key characteristic of an agency relationship. *See Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 729, 779 P.2d 99, 106 (1989); *Hansler v. Bass,* 106 N.M. 382, 385, 743 P.2d 1031, 1034 (Ct.App.), *cert. denied,* 106 N.M. 375, 743 P.2d 634 (1987). Yet, control is only one necessary element to prove entitlement to the agency tax exemption. In addition, as the Department's policy states, the agency relationship has to be one in which the agent could bind the principal in dealings with third parties. For instance, when an agent receives money as a trustee in a binding relationship between the principal and third party, the agent never has a possessory interest in the money other than as an agent. The money an agent receives in the role of trustee is not the agent's own and is thus not taxable. *See Westland Corp. v. Commissioner of Revenue,* 83 N.M. 29, 33, 487 P.2d 1099, 1103 (Ct.App.) (money the taxpayer received "as agent or trustee ... and disbursed by it in the payment of debts or obligations owing" by the principal are not gross receipts), *cert. denied,* 83 N.M. 22, 487 P.2d 1092 (1971); *cf. Wing Pawn Shop,* 111 N.M. at 740, 809 P.2d at 654 (if a pawn broker assumes absolute control over proceeds from liquidation of pawned chattel, the broker is not a selling agent for the pawnor). An agent for a disclosed principal is, therefore, not liable for sales-type taxes on amounts for which he is reimbursed by his principal. *Des Moines & Cent. Iowa Ry. Co. v. Iowa State Tax Comm'n,* 253 Iowa 994, 115 N.W.2d 178, 182–83 (1962).

Although no previous New Mexico cases have involved gross receipts tax in an agency relationship under which the agent retained employees paid from the principal's operating account, a line of California cases have provided guidance to us in addressing the issue. In *City of Los Angeles v. Meyers Bros. Parking System, Inc.,* 54 Cal. App.3d 135, 126 Cal.Rptr. 545 (1975), the taxpayer managed parking lots for a principal. The principal reimbursed the taxpayer for its employment-related expenses and had oversight authority, but the taxpayer provided the day-to-day management and supervision. The court held that both a contractor and agent relationship existed so that the money the principal reimbursed to the taxpayer for employment expenses was not taxable as gross receipts. *Id.* at 547.

In *City of Los Angeles v. Clinton Merchandising Corp.,* 58 Cal.2d 675, 25 Cal. Rptr. 859, 375 P.2d 851 (1962), the taxpayer was an affiliate of retail clothing stores. It bought inventory for the stores, handled all the stores' receivables and payables, and assisted in some management. *Id.* at 852, 375 P.2d 851. It sent out inventory on account and classed the later payments for the inventory as repayment of advances. It also advanced money to the stores for employment-related expenses. *Id.* The court equated the inventory transfer as a wholesale operation, so the repayment of advances were taxable gross receipts. *Id.* at 853–54, 375 P.2d 851. However, the

payment of employment-related expenses was similar to an attorney's advance of costs for which a client is ultimately responsible. *Id.* at 855, 375 P.2d 851. Thus, in connection with the repayment of advances on the employment-related expenses, the court concluded that the taxpayer was an agent of the stores. As a result, the repayments were not taxable gross receipts. *Id.*

Based on these cases, we understand the California rule to be as follows: if a party only receives money either as an advance for future payment of, or reimbursement for past payment of, another's employment-related obligations, then an agency relationship exists sufficient to avoid taxation of those funds as gross receipts. *Cf. Programming–Enterprises, Inc. v. City of Los Angeles,* 215 Cal.App.3d 281, 263 Cal. Rptr. 558 (1989) (taxpayer not an agent when receiving money to satisfy its own obligations to independent contractors). This statement is consistent with the New Mexico policy of excluding from taxation that money a party receives as a trustee. *Westland Corp.,* 83 N.M. at 33, 487 P.2d at 1103. This rule is also similar to our previous holding in *Stohr v. New Mexico Bureau of Revenue,* 90 N.M. 43, 46–47, 559 P.2d 420, 423–24 (Ct.App.1976), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977), in which we held a contractor's receipt of costs reimbursements advanced for the purchase of materials and supplies was a non-taxable transaction because the contractor received the reimbursements as an agent. Because the rule and analysis contained in these California cases comport with previous New Mexico law involving other kinds of transactions, we adopt the rule stated above as law in New Mexico.

### III. *Application of the Rule to the Facts of this Appeal.*

■ Whether an agency relationship exists is generally an issue of fact. *Bien Mur Indian Mkt. Ctr., Inc. v. Taxation & Revenue Dep't,* 108 N.M. 355, 357, 772 P.2d 885, 887 (Ct.App.1988). Ordinarily, then, we would simply canvass the whole record to determine whether there was substantial evidence supporting the implicit finding that there was not an agency relationship between Taxpayer and Owner. *See Wing Pawn Shop,* 111 N.M. at 739, 809 P.2d at 653. However, the Department contends that the Agreements establishing the relationship between Taxpayer and Owner are unambiguous because nothing in the Agreements requires extrinsic evidence to discern the parties' intent.

■ When a contract is unambiguous, we discern the parties' intent from the words of the contract. *Levenson v. Mobley,* 106 N.M. 399, 401–02, 744 P.2d 174, 176–77 (1987). Without ambiguity, we may only apply provisions of a contract rather than interpret them. *Id.* at 402, 744 P.2d at 177. The contract's meaning thus becomes a question of law for this Court rather than a question of fact for the fact finder. *See Vargas v. Pacific Nat'l Life Assurance Co.,* 79 N.M. 152, 155–56, 441 P.2d 50, 53–54 (1968). Reading the Agreements as a whole, *see Montoya v. Villa Linda Mall, Ltd.,* 110 N.M. 128, 130, 793 P.2d 258, 260 (1990), we conclude that they create an unambiguous agent-principal relationship.

■ Even though the Agreements designate an "agent" and a "principal," that designation alone is not controlling. *See Bien Mur Indian Mkt. Ctr.,* 108 N.M. at 357, 772 P.2d at 887; *cf. Chevron Oil Co. v. Sutton,* 85 N.M. 679, 681, 515 P.2d 1283, 1286 (1973) (nature of action, not party's designation of the relationship, is controlling). However, the retention of control by Owner and the delegation of specified duties indicates an agency relationship. *See* Restatement (Second) of Agency § 17 (1958) (a party may delegate to another the authority to do anything so long as it is not illegal). Generally, the Agreements established a clear delegation of authority accompanied by a detailed description of the scope of that authority. The terms of the Agreement and the Plan stated how much Taxpayer was to pay the employees, and that Taxpayer was to take that amount out of Owner's bank account. The Agreements and Plan stated exactly the duties each employee was to perform.

Additionally, Owner had ultimate approval authority over Taxpayer's actions. Thus, if Taxpayer did not pay the employees or have them perform their specified duties, Taxpayer would have breached the Agreements and Plan. Although the Agreements contain language about how Taxpayer is to hire, fire, and pay its employees, this language simply specifies a duty that is inferred from a general delegation of duties. *See* Restatement (Second) of Agency § 73(c) (1958) (an agent has the inferred authority "to employ, supervise, or discharge employees as the course of business may reasonably require"); *see also Burguete v. G.W. Bond & Bro. Mercantile Co.*, 43 N.M. 97, 103, 85 P.2d 749, 753 (1938) (citing Restatement § 73 as delineating the authority of a general agent authorized to manage a business).

▆▆ The Department argues that only when a third party has an enforceable contract against a principal is there sufficient indicia of agency. The Department contends that, under the facts of this case, there was no evidence of a disclosed agency, and therefore the employees had no right of action against Owner. We are not so much concerned with who is required to pay the employees, as that is but one indicia of agency. We are more concerned with whether Taxpayer had the discretion to pay the employees in a manner other than by the terms of the agency relationship. Although both Taxpayer and Owner may have had a duty to pay the on-site employees, we conclude the money Taxpayer received as reimbursement for the expense of paying those employees was not taxable. *Des Moines & Cent. Iowa Ry. Co.*, 115 N.W.2d at 182–83. The level of control Owner exercised over Taxpayer left Taxpayer with no discretion concerning when and how much to pay the employees. Based on the administrative record before us, we conclude that Taxpayer never possessed funds representing the wages paid to the on-site employees to use as Taxpayer saw fit. Additionally, the indemnification clause in the Agreement, requiring Owner

to pay Taxpayer for employment expenses, indicates to us that payment of wages to on-site employees was ultimately the duty of Owner. Because an undisclosed principal is liable for contracts its agent enters into in the ordinary course of business, *see Morris Oil Co., Inc. v. Rainbow Oilfield Trucking, Inc.*, 106 N.M. 237, 240, 741 P.2d 840, 843 (1987), we conclude that the Department's policies and rules allowing exemption for reimbursement of agency costs only when the principal is disclosed are unreasonable and contrary to law. *See Kramer v. New Mexico Human Servs. Dep't, Income Support Div.*, 114 N.M. 479, 484, 840 P.2d 1245, 1250 (Ct.App.1992) (striking down agency's interpretation of statute as being contrary to congressional policy). Regardless of whether an agency is disclosed or not, when one party exercises as much control over another as did Owner here over Taxpayer under the Agreements, there was an agency relationship. We conclude Taxpayer received the reimbursements as an agent of Owner. Consequently, we hold that the reimbursements were not taxable as gross receipts.

In its motion for rehearing, the Department argued that we have created uncertainty regarding what agency relationships will lead to nontaxable receipts so that parties will create agency relationships solely to avoid taxation of employment expenses. At the same time, the Department contends we are overlooking the plain language of the provision that purports to exclude employment matters. from the agency relationship between Taxpayer and Owner created by the Agreements. However, our holding is based on the facts of this case, in which the Agreements created an agency relationship that left all control, including control over employment matters, with Owner. Taxpayer merely executed Owner's directives. Our ruling on a less-pervasive agency relationship will have to await another day.

**CONCLUSION**

Because we conclude that Taxpayer was an agent of Owner for the purpose of em-

ploying and paying the on-site employees employed at Owner's property, we hold that the money Taxpayer received from Owner as reimbursement for employee-related expenses is not subject to New Mexico's gross receipts tax. We thus reverse the Department's Decision and Order and remand for entry of an order abating the remaining amount of the assessment against Taxpayer. Taxpayer is awarded costs on appeal.

**IT IS SO ORDERED.**

CHAVEZ and BLACK, JJ., concur.