896 P.2d 498

**BRIM HEALTHCARE, INC.,**
**Petitioner–Appellant,**

v.

**STATE of New Mexico, TAXATION AND REVENUE DEPARTMENT,**
**Respondent–Appellee.**

No. 15658.

Court of Appeals of New Mexico.

May 1, 1995.

Judith D. Schrandt, Sheehan, Sheehan & Stelzner, P.A., Donald E. Swaim, Albuquerque, for petitioner-appellant.

Tom Udall, Atty. Gen., Javier Lopez, Sp. Asst. Atty. Gen., Taxation and Revenue Dept., Santa Fe, for respondent-appellee.

*OPINION*

BLACK, Judge.

Brim Healthcare, Inc. (Brim), a corporation headquartered in Oregon, contracted to provide management services to two hospitals in northern New Mexico. Brim's services consisted of a management consultant function and a personnel staffing function.

In 1991, the New Mexico Department of Taxation and Revenue (the Department) performed an audit of Brim. As a result of that audit, the Department mailed Brim an assessment for more than $39,000.00 in gross

receipts tax, penalties, and interest. There is no dispute that Brim's management consulting fees are subject to New Mexico's gross receipts tax. Brim, however, filed a protest challenging the assessment of gross receipts tax on the fees it received for staffing the hospitals with management personnel. This appeal results from the hearing officer's final decision and order upholding the assessment. We affirm.

### STANDARD OF REVIEW

The Department's assessment of taxes and penalties is presumed to be correct. NMSA 1978, § 7–1–17(C) (Repl.Pamp.1993). This Court may set aside a hearing officer's decision and order only if it is: "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7–1–25(C) (Repl. Pamp.1993); *see Unisys Corp. v. New Mexico Taxation & Revenue Dep't,* 117 N.M. 609, 610–11, 874 P.2d 1273, 1274–75 (Ct.App. 1994). While we employ the whole record standard of review, the evidence is viewed in the light most favorable to the decision of the hearing officer. *Carlsberg Management Co. v. New Mexico Taxation & Revenue Dep't,* 116 N.M. 247, 249, 861 P.2d 288, 290 (Ct.App. 1993).

### FACTS

■ Brim contracted to provide management services for Holy Cross Hospital in Taos and Northeastern Regional Hospital in Las Vegas. The contracts called for two separate payments, a "management fee," and a reimbursement of salaries, fringe benefits and expenses for Brim's management employees working at the hospitals. These executive employees, a director of nursing at Taos, and chief financial officers and chief executive officers at both hospitals, are recruited and employed by Brim subject to the approval of the boards of the respective hospitals.

Under the contracts, Brim is to supervise and direct the day-to-day management and operation of the hospitals, including financial management, data processing, personnel staffing, payroll, records management, staff development, and marketing. Brim must make monthly and annual reports to the hospital boards and serve the hospitals as a consultant in all areas of hospital management, including the recommendation of long range plans. The contracts explicitly provide that Brim is acting at all times as an independent contractor in performing its services and is not an agent of the hospitals.

Brim, then, is essentially responsible for the management function of the hospitals, subject to the general supervision of the hospital boards. The hospitals are required to reimburse Brim, dollar for dollar, for the cost of salaries, payroll-related expenses, benefits, travel, and moving expenses incurred by the management personnel. Although these management personnel costs are subject to approval by the hospitals, nothing in the contracts gives the hospitals the right to determine the timing of payments and benefits to the management personnel provided by Brim.

Brim selects the management personnel for each hospital. The personnel remain Brim employees, and Brim reports them for tax purposes, carries them on its payroll, provides for them under its own benefit and retirement programs, and may transfer them among the various hospitals with which it has contracts. Indeed, under the terms of the contracts, the hospitals are expressly prohibited from soliciting such Brim personnel to become hospital employees. Although the Brim management personnel keep the hospital boards informed about hospital operations, they are primarily accountable to Brim for their performance in carrying out the Brim management plan for the general operation of the hospitals.

The contracts provide for the indemnification of Brim by the hospitals, and of the hospitals by Brim, only in situations where negligence results in a claim or liability against either party. With respect to any other circumstances from which claims may arise, the contracts explicitly eschew any liability of either party for the debts, obligations or liabilities of the other party.

### DISCUSSION

■ The gross receipts tax "is imposed on any person engaging in business in New Mexico." NMSA 1978, § 7–9–4(A) (Repl.

Pamp.1993). The tax is imposed upon gross receipts, which means "the total amount of money or the value of other considerations received from selling property or from performing services." *New Mexico Enters. v. Bureau of Revenue*, 86 N.M. 799, 800, 528 P.2d 212, 213 (Ct.App.1974). Where the taxpayer claims an exemption from the gross receipts tax, the exemption must be unambiguously expressed in the statute and clearly established by the taxpayer. *Security Escrow Corp. v. Taxation & Revenue Dep't*, 107 N.M. 540, 543, 760 P.2d 1306, 1309 (Ct.App. 1988). The taxpayer therefore has the burden of overcoming the statutory presumption that all receipts of a person engaging in business are subject to the gross receipts tax. *See Wing Pawn Shop v. Taxation & Revenue Dep't*, 111 N.M. 735, 740–41, 809 P.2d 649, 654–55 (Ct.App.1991).

Brim relies upon *Carlsberg Management Co. v. New Mexico Taxation and Revenue Department*, 116 N.M. 247, 861 P.2d 288 (Ct.App.1993), to support its claim that the money received from the hospitals as reimbursement for salaries and benefits paid to the Brim employees working at the hospitals should be exempt from gross receipts tax. The present record is, however, distinguishable from *Carlsberg*. Brim is not merely a conduit for funds to be paid to third parties. Brim is receiving the payments from the hospitals for its own account and then expending them to meet its own responsibilities. We agree with the hearing officer that the most significant distinction between this case and *Carlsberg* "lies in the fact that in the instant case, there is no broad indemnification clause which has the effect of shifting the duty to pay wages to the employees to the hospitals."

In his final decision and order, the hearing officer also enumerated several other significant facts that argue against a finding that Brim (Taxpayer) is an agent:

> The contracts reserve to the Taxpayer the right to make changes in the management employees. Although the hospitals must approve such changes, they may not unreasonably withhold such approval. The Taxpayer controls when the employees are paid, not the hospitals. Mr. Gary Elings,

comptroller for the Taxpayer testified that the management personnel report to the Taxpayer on a first line basis, as their employer. Thus, when they do report to the hospitals, they report as part of the management team of the Taxpayer, as part of the Taxpayer's overall management responsibilities. Under these circumstances it is clear that the obligation to pay the management personnel lies with the Taxpayer. As an obligation of the Taxpayer which does not arise in the context of negligence, the hospitals have no liability for this obligation under the terms of the indemnification language of the contract. This indicates that the Taxpayer is not an agent of the hospitals with respect to the obligation to pay these employees.

Brim therefore does not meet the primary test set forth in *Carlsberg* because Brim alone was responsible to its employees for their salaries and benefits. Moreover, unlike the contracts in *Carlsberg*, which expressly characterized the relationship as one of agency, *id.* at 251, 861 P.2d at 292, the present contracts expressly state that Brim is not an agent of the hospitals, but rather is an independent contractor. Thus, the language of *Carlsberg* that seems most applicable to the present case is found in this Court's conclusion that "[o]ur ruling on a less-pervasive agency relationship will have to await another day." *Id.* at 252, 861 P.2d at 293. That day has now arrived.

The legal precedent for *Carlsberg* came in large measure from California cases. The California opinion cited in *Carlsberg* that is most analogous to the present facts is *Programming–Enterprises v. City of Los Angeles*, 215 Cal.App.3d 281, 263 Cal.Rptr. 558 (1989), *review denied* (Jan. 31, 1990). In that case, the taxpayer kept the resumes of several engineers and computer programmers (professionals) on file and, when contacted, would place them with client firms. *Id.* 263 Cal.Rptr. at 560. As under the Brim contracts, the professional who was placed at a job was not a party to the taxpayer's agreement with the client firm. *Id.* The professional could choose either to have the taxpayer pay the workers' compensation coverage and withhold taxes, or to be legally consid-

ered an independent contractor and be personally responsible for those obligations. *Id.* As in the present case, the professional also was not given the option of becoming an employee of the client firm. *Id.*

The taxpayer in *Programming–Enterprises* did not contest payment of the Los Angeles City gross receipts tax for the professionals who were its actual employees and were simply placed with a client firm. *Id.* at 561. Rather, the taxpayer only challenged payment of gross receipts tax for those professionals who chose to be treated as independent contractors. *Id.* The trial court entered judgment in favor of the taxpayer. *Id.* at 562. In reversing, the California Court of Appeals focused on the legal obligation test, *id.*, which we later adopted in *Carlsberg.* *See Carlsberg,* 116 N.M. at 251, 861 P.2d at 292. In discussing the gross receipts exemption for agents, the court said that the exemption

> appears to apply ... when a taxpayer receives monies not for its own use and benefit but rather as an intermediary between two parties dealing with each other. For example, a travel agent or a stockbroker could apparently exclude from their gross receipts sums received from clients to purchase airline tickets or investment securities, respectively. Sums the taxpayer pays out pursuant to its own obligations cannot be subtracted from its gross receipts subject to tax.

*Programming–Enters.,* 263 Cal.Rptr. at 562–63 (citations omitted).

As we recognized in *Carlsberg,* these principles are consistent with the New Mexico policy of excluding from the gross receipts tax, money that a party receives as a trustee or agent. *Carlsberg,* 116 N.M. at 251, 861 P.2d at 292; *see Westland Corp. v. Commissioner of Revenue,* 83 N.M. 29, 33, 487 P.2d 1099, 1103 (Ct.App.), *cert. denied,* 83 N.M. 22, 487 P.2d 1092 (1971); *see also Wing Pawn Shop,* 111 N.M. at 740, 809 P.2d at 654 (transactions by a non-agent taxpayer were not beyond reach of taxation statutes).

An earlier California Court of Appeals case also rejected application of the agency exception on analogous facts. In *Independent Casting–Television, Inc. v. City of Los Angeles,* 49 Cal.App.3d 502, 122 Cal.Rptr. 416 (1975), the taxpayer provided actors to perform as extras for movie producers. *Id.* 122 Cal.Rptr. at 417. The taxpayer kept a file that included hundreds of actors. *Id.* When a producer called about a role, the taxpayer selected an actor with the appropriate background and told the actor where and when to report. *Id.* After the assignment, the producer sent the actor with an authorized voucher to the taxpayer. *Id.* Before paying the actor, the taxpayer computed the amount earned and subtracted the appropriate tax and insurance withholdings. *Id.* at 418. The taxpayer then invoiced the producer for the wages paid to the employee, as well as the estimated taxes, which the taxpayer forwarded to the appropriate federal and state agencies " 'as if it were the employer' of the extras." *Id.* The taxpayer also invoiced the producer for all workmen's compensation and health care benefits. *Id.*

The trial court upheld the taxpayer's claim for refund of the gross receipts paid on amounts received to reimburse the taxpayer for wages, taxes, and benefits. *Id.* at 419. The California Court of Appeals recognized that the proper legal analysis was dependent "upon characterization of the relationship of the extras, Taxpayer, and the producers." *Id.* The court set forth the agency test within the shared employee context as contingent upon whether the amounts paid to the actors by the taxpayer "were advanced by it as agent for the producers to satisfy payroll obligations of the producers to their employees." *Id.* The court recognized that if "those sums were paid by Taxpayer to satisfy its own obligation to its own employees and were includable within a charge for their services made by Taxpayer to the producers, then the entire amount paid by the producers is includable within Taxpayer's gross receipts." *Id.* When the court applied this rule to the facts, it concluded, "It is the fact that Taxpayer meets its own payroll and incidental expenses and not the technicalities of the joint employment relationship that results in the payments from the producers being includable in taxpayer's gross receipts." *Id.* at 420.

As in *Programming–Enterprises* and *Independent Casting,* the relationship between Brim and the two hospitals was one in which

one company merely assigned its employees to work temporarily at another location operated by a second company. The employees continued their relationship with their employer, Brim, and their salaries remained the legal obligation of Brim, even though Brim was reimbursed for the salaries. We affirm the conclusion of the hearing officer that "[t]he reimbursements of [Brim's] management personnel costs were not received by the Taxpayer as reimbursement of expenses incurred as an agent of the hospitals pursuant to its contracts with the hospitals."

Affirmed.

IT IS SO ORDERED.

ALARID and BUSTAMANTE, JJ., concur.