| ATC V. N.M. TAXATION AND REVENUE |
|---|

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE MATTER OF THE PROTEST OF ATC HEALTHCARE SERVICES, INC., ATC HEALTHCARE SERVICES, INC.**
**Protestant-Appellant/Cross-Appellee,**
**v.**
**NEW MEXICO TAXATION AND REVENUE DEPARTMENT,**
**Respondent-Appellee/Cross-Appellant.**

Docket No. A-1-CA-36081
COURT OF APPEALS OF NEW MEXICO
May 7, 2019

APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE, Brian VanDenzen, Chief Hearing Officer

**COUNSEL**

Sutin, Thayer & Browne APC, Timothy R. Van Valen, Stevan Douglas Looney, Wade Jackson, Justin R. Sawyer, Albuquerque, NM for Appellant

Hector H. Balderas, Attorney General, Peter Breen, Special Assistant Attorney General, Santa Fe, NM for Appellee.

**JUDGES**

M. MONICA ZAMORA, Chief Judge. WE CONCUR:  J. MILES HANISEE, Judge JULIE J. VARGAS, Judge

**AUTHOR:** M. MONICA ZAMORA

**MEMORANDUM OPINION**

**M. ZAMORA, Chief Judge.**

**{1}**     The New Mexico Taxation and Revenue Department (the Department) conducted an audit pursuant to the New Mexico Gross Receipts and Compensating Tax Act (the Act) NMSA 1978, §§ 7-9-1 to -115 (1966, as amended through 2018), which resulted in the assessment of unpaid gross receipts tax against ATC Healthcare

Services, Inc. (Taxpayer) in the amount of $344,672.51, which included a penalty assessment and interest through the date of assessment. Taxpayer protested the Department's imposition of gross receipts tax on receipts connected to its franchise agreement (Franchise Agreement) with Care Connection, Inc. (CCI), receipts from licensing a trademark to CCI, and from services Taxpayer performed outside New Mexico. The hearing officer abated all assessed tax related to pre-June 27, 2007 franchise-related receipts and the assessed penalty in its entirety but affirmed the remainder of the post-June 27, 2007 assessments relevant to this appeal. Taxpayer appeals the affirmance of the post-June 27, 2007 assessment, and the Department cross appeals the abatement of the penalty.

{2}     For the reasons set forth in this memorandum opinion, we hold that the hearing officer's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, and that the decision and order are supported by substantial evidence. Accordingly, we affirm the hearing officer's decision and order.

**BACKGROUND**

{3}     Taxpayer, a Georgia corporation with its principal place of business in New York, entered into a Franchise Agreement with CCI, a New Mexico-based company. The term of the Franchise Agreement was from 1998 to 2009. The Franchise Agreement granted CCI the right to operate a franchise that provided temporary health care staff to businesses in New Mexico in accord with Taxpayer's developed style, system, and technique of business operation. The Franchise Agreement gave CCI the right to Taxpayer's "trademarks, service marks, copyrights[,] and logotypes[.]"

{4}     In addition to granting the right to its proprietary marks, Taxpayer performed certain services for CCI. Taxpayer was responsible for collection and billing of CCI's New Mexico clients. Taxpayer was also responsible for CCI's New Mexico employees' payroll. The Franchise Agreement further states that Taxpayer was the "legal employer" of CCI's temporary New Mexico employees. The temporary employees recorded their time on time cards displaying Taxpayer's name prominently. Taxpayer paid the temporary employees based on information it received from CCI and otherwise exercised no discretion in distributing the payroll. Under the Franchise Agreement, Taxpayer was prohibited from "making any guarantee or representation or incur any debt on behalf of CCI." The parties agreed Taxpayer would receive forty percent of the gross margin for its "personnel services."

{5}     In 2012 the Department assessed Taxpayer $226,176.97 for unpaid gross receipts tax, $45,235.43 in penalties, and $73,260.11 in interest for the reporting periods from January 31, 2004 through August 31, 2010. Taxpayer protested this assessment. Relevant to this appeal, Taxpayer's protest challenged the imposition of gross receipts tax on money: (1) received from CCI clients (a) for personnel payroll and (b) remitted to CCI as its profit under the Franchise Agreement, arguing that amounts received solely on behalf of another in a disclosed agency capacity are not "gross receipts," (2) received for the grant of a trademark license, arguing that after the 2007

amendment, the license was not "property;" and (3) received for services provided to CCI for payroll, billing and collections, arguing those services were performed outside the State of New Mexico. Taxpayer also protested the Department's assessment of penalty.

{6}     Both parties moved for summary judgment. The hearing officer granted Taxpayer's protest in part and denied it in part. The hearing officer concluded that "Taxpayer failed to establish legally and factually that it collected receipts not subject to gross receipts tax . . . as a disclosed agent of CCI[.]" The hearing officer abated the Department's assessment of franchise royalties of the forty percent gross margin earned pre-June 27, 2007 because under former law, they were "a sale of property outside of New Mexico."[1] However, the hearing officer affirmed the assessment of the post-June 27, 2007[2] receipts because the Legislature amended NMSA 1978, Section 7-9-3.5 (2007), in June 2007, to include receipts in consideration of granting a license to use a franchise employed in New Mexico, including trademarks associated with the franchise. The hearing officer also abated the Department's assessment of $45,235.43 in penalties because he concluded Taxpayer established it made a mistake of law, in good faith, and on reasonable grounds. Taxpayer appeals the hearing officer's affirmation of the post-June 27, 2007 assessment of gross receipts tax on "the total amount of money or value of other consideration received from granting CCI a right to use a franchise employed in New Mexico, including trademarks associated with the franchise[,]" including his conclusion that Taxpayer was not a disclosed agent of CCI. The Department cross appeals the penalty abatement. We reserve further discussion of the pertinent facts for our analysis.

## DISCUSSION

### Standard of Review

{7}     "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). "The Department's assessment of taxes and penalties is presumed to be correct." *Brim Healthcare, Inc. v. Taxation & Revenue Dep't*, 1995-NMCA-055, ¶ 3, 119 N.M. 818, 896 P.2.d 498 (internal quotation marks and citation omitted). Pursuant to NMSA 1978, Section 7-1-25(C) (2015), this Court can only set aside a hearing officer's decision and order on appeal if we conclude that it is: "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." In reviewing for sufficiency of the evidence, we look to the whole record and review the evidence, in the light most favorable to the agency's findings. *Wing Pawn Shop v. Taxation & Revenue Dep't*, 1991-NMCA-024, ¶ 8, 111 N.M. 735, 809 P.2d 649. This Court is also required to give deference to the

---

1 The Department does not appeal this abatement.

2 Section 7-9-3.5 was effective June 15, 2007. The parties, however, do not dispute the use of the June 27, 2007 date and the district court uses that date in its decision and order. We therefore use the June 27, 2007 date for purposes of this opinion.

hearing officer's reasonable interpretation and application of the law. *See Jicarilla Apache Nation v. Rodarte*, 2004-NMSC-035, ¶ 25, 136 N.M. 630, 103 P.3d 554 ("[W]e do give deference to an agency's reasonable interpretation or application of law.").

**Statutory Presumptions and Burden of Proof**

**{8}**     It is presumed that all receipts are taxable. *See* § 7-9-5(A) ("To prevent evasion of the gross receipts tax and to aid in its administration, it is presumed that all receipts of a person engaging in business are subject to the gross receipts tax."). Therefore, "[t]he taxpayer claiming that receipts are not taxable bears the burden of proving the assertion." *MPC Ltd. v. N.M. Taxation & Revenue Dep't*, 2003-NMCA-021, ¶ 12, 133 N.M. 217, 62 P.3d 308. We further presume the Department's tax assessment is correct. *See* § 7-1-17(C) ("Any assessment of taxes or demand for payment made by the department is presumed to be correct."). Regulation 3.1.6.12(A) NMAC explains the effect of the presumption of correctness:

> The effect of the presumption of correctness is that the taxpayer has the burden of coming forward with some countervailing evidence tending to dispute the factual correctness of the assessment made by the secretary. Unsubstantiated statements that the assessment is incorrect cannot overcome the presumption of correctness.

If Taxpayer meets its burden of proof and overcomes the presumption of correctness, the burden shifts back to the Department to prove the correctness of its tax assessment. *See MPC Ltd.*, 2003-NMCA-021, ¶ 15. Additionally, administrative regulations are "presumed to be a proper implementation of the provisions of the laws that are charged to the department." NMSA 1978, § 9-11-6.2(G) (2015) (explaining the department's administrative regulations, rulings, instructions, orders, and presumption of correctness).

**I.      The Hearing Officer Did Not Err as a Matter of Law in Concluding Taxpayer was Not Acting in a Disclosed Agent Capacity**

**{9}**     Taxpayer contends that the money received from CCI clients (a) used for payment of CCI's employees and (b) remitted to CCI as its profit under the Franchise Agreement is not taxable gross receipts because Taxpayer received the money solely in its capacity as CCI's disclosed agent pursuant to Section 7-9-3.5(A)(3)(f) (2007). Taxpayer argues that it was error as a matter of law for the hearing officer to conclude otherwise. Taxpayer further argues that the requirements for a disclosed agency as set out in 3.2.1.19(C) NMAC are "entirely beyond the statute and thus void." Specifically, Taxpayer asserts that the regulation's requirement that the agent must have the power to bind the principal in a contract with a third party so that the third party can enforce the contractual obligation against the principal is merely a consequence of an agency relationship, not an element required to create an agency relationship. Thus, Taxpayer argues it was acting in a disclosed agency capacity.

**{10}**   We initially note that Taxpayer's argument relies on two authorities we do not find persuasive. First, it relies on *Carlsberg Mgmt. Co. v. N.M. Taxation & Revenue Dep't*, 1993-NMCA-121, ¶¶ 19, 21, 116 N.M. 247, 861 P.2d 288 (holding that where one party exercises significant control over another pursuant to an agreement, an agency relationship existed, and the reimbursement money for employee-related expenses received by taxpayer from owner was not subject to gross receipts tax). However, *Carlsberg* was decided before our Legislature enacted the statute to require the relationship between taxpayer and client be that of a "disclosed agency." *See* Section 7-9-3.5(A)(3)(f) (2007). Thus, this Court's holding in *Carlsberg* is not applicable here. *See MPC Ltd.*, 2003-NMCA-021, ¶ 35 (stating that to the extent *Carlsberg* remains viable, it is "merely instructive for any analyses in regard to control by [the principal] on the issue of agency"). The issue of principal control is not a particularly significant consideration in the present case. Here, other than exercising discretion in the distribution of the payroll, CCI did not otherwise exercise any other control over Taxpayer, therefore *Carlsberg* is not instructive. Second, Taxpayer also points us to Revenue Ruling 401-09-3, issued by the Department, addressing outsourcing of employment administrative functions; however, Taxpayer cites to no authority that revenue rulings are binding on this Court, and thus we assume no such authority exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel. Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." (citation omitted)).

**{11}**   Turning to the merits of taxpayer's argument, the hearing officer concluded that Taxpayer was not acting as a disclosed agent of CCI. The hearing officer determined that Taxpayer did not establish that the temporary employees or CCI's clients were informed by contract, or otherwise, that they had the right to proceed against CCI to enforce their respective obligation. Additionally, the hearing officer concluded that there was nothing to indicate that Taxpayer met the bookkeeping and billing requirements set forth in 3.2.1.19(C)(2) NMAC.

**{12}**   Section 7-9-3.5(A)(3)(f) excludes from gross receipts tax amounts received solely on behalf of another in a disclosed agency capacity. This statutory provision is discussed in Regulation 3.2.1.19(C)(1) NMAC, which provides "[a]n agency relationship exists if a person has the power to bind a principal in a contract with a third party so that the third party can enforce the contractual obligation against the principal." To qualify for the disclosed agent exception, a taxpayer must abide by specific bookkeeping and billing procedures, including separately stating expenses incurred as an agent on behalf of the principal on the agent's billing to the client and separately identifying those expenses in the agent's books. 3.2.1.19(C)(2) NMAC. If these procedures are not followed, the exclusion does not apply. *See* 3.2.1.19(C)(3) NMAC.

**{13}**   In *MPC Ltd.*, this Court examined whether an agency relationship existed between a taxpayer and its clients where the taxpayer's company provided temporary staffing services to clients in New Mexico. 2003-NMCA-021, ¶ 1. The clients paid the

taxpayer, who then paid the employees' payroll. *Id.* ¶ 5. The taxpayer argued that because it was acting as an agent on behalf of the client, its receipts received from clients for payroll were excluded from gross receipts under the disclosed agency exception. *Id.* ¶¶ 2, 8-9. We disagreed and held that the taxpayer was not acting in a disclosed agency relationship because it did not meet the requirements set forth in 3.2.1.19(C)(1) NMAC. *MPC Ltd.*, 2003-NMCA-021, ¶¶ 37-39. As this Court explained, a disclosed agency relationship exists when: "(1) the agent ([here, Taxpayer]) has the authority to bind the principal ([CCI]) to an obligation ([CCI clients and CCI temporary employees]) created by the agent ([Taxpayer]), and (2) the beneficiary of that obligation ([CCI clients and CCI temporary employees]) is informed by contract that he or she has a right to proceed against the principal ([CCI]) to enforce the obligation." *Id.* ¶ 37. In *MPC Ltd.*, the taxpayer failed to prove, among other things, whether the employees were told they could enforce a payroll obligation against the client. *Id.* ¶ 39. Thus, we held that substantial evidence supported the determination that the taxpayer was not acting in a disclosed agency capacity under Section 7-9-3(F)(2)(f) (2002).[3] *Id.* ¶ 41.

**{14}** Taxpayer's argument that the requirements for a disclosed agency as set out in 3.2.1.19(C) NMAC are beyond the statute and thus void is contrary to this Court's interpretation in *MPC Ltd.*, which used the regulation as a requirement for fitting within the disclosed agency exception. Although Taxpayer generally argues that the application of 3.2.1.19(C) NMAC in *MPC Ltd.* is contrary to law, it fails to develop the argument beyond its stated disagreement with *MPC Ltd.* As did *MPC Ltd.*, we disagree and otherwise view 3.2.1.19(C) NMAC as being harmonious with the plain language of Section 7-9-3.5. Moreover, we will not review Taxpayer's undeveloped argument. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."); *see also Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 15, 134 N.M. 43, 73 P.3d 181 (requiring "special justification in order to depart from precedent").

**{15}** We agree with the hearing officer's determination that Taxpayer was not acting in a disclosed agency capacity. We note at the outset that the Franchise Agreement between CCI and Taxpayer explicitly stated that CCI was an independent contractor and that "[n]othing in this Franchise Agreement shall be construed so as to create a partnership, joint venture or agency" between the parties. While that designation alone is not controlling, *see Chevron Oil Co. v. Sutton*, 1973-NMSC-111, ¶ 4, 85 N.M. 679, 515 P.2d 1283 (stating that the nature of action, not the party's designation of the relationship, is controlling), we are still persuaded that Taxpayer was not CCI's disclosed agent. First, there is nothing in the record to show that Taxpayer had any power or authority to bind CCI in their interactions with CCI clients and employees. In fact, the Franchise Agreement prohibited Taxpayer from making any guarantee or representation or incur any debt on behalf of CCI. Second, Taxpayer has not shown that it was a "disclosed" agent under the statute. Taxpayer argues that its role as agent on behalf of CCI was disclosed to and known by the temporary employees and CCI's customers because the employees recorded time performed for CCI on Taxpayer time cards and received payments for that time from Taxpayer. However, Taxpayer provided

---

3 Section 7-9-3(F)(2)(f) (2002) was recompiled to Section 7-9-3.5(A)(3)(f) (2007).

no evidence to support its claim that employees or clients were specifically informed they could enforce any payroll or tax obligations against CCI rather than Taxpayer. In addition, Taxpayer did not establish that the employees or clients were aware they could proceed against CCI to collect outstanding payroll or contractual obligations or seek other appropriate remedies. *See MPC Ltd.* 2003-NMCA-021, ¶¶ 37, 39 (noting that employees being aware of the relationship between taxpayer and principal was insufficient to establish a disclosed agency relationship under 3.2.1.19(C)(1) NMAC). The employees' time cards, paychecks, and benefits prominently displayed Taxpayer's information suggesting that Taxpayer, not CCI, was the entity they would need to seek any redress against. Finally, Taxpayer did not present any evidence that CCI's clients' billings or bookkeeping clearly indicated which amounts were being billed as reimbursements, per the requirement of 3.2.1.19(C) NMAC. *See MPC Ltd.*, ¶ 26 (discussing how the taxpayer had not met the billing and bookkeeping requirements of 3.2.1.19(C) NMAC).

**{16}**   Based on the foregoing, we conclude that the hearing officer did not err as a matter of law in concluding that Taxpayer failed to qualify for the disclosed agency exception.

**II.     The Hearing Officer Did Not Err as a Matter of Law in Concluding That the Trademark Licensing Fees in This Case Are Consideration for Granting a Franchise and Subject to Gross Receipts Tax**

**{17}**   Taxpayer argues that the post-June 27, 2007 receipts it received for the grant of a trademark license to CCI were not "gross receipts" within the meaning of Section 7-9-3.5(A)(1) because they fall under an exemption in Section 7-9-3(J) (2007) for trademark licenses. Taxpayer argues that its trademark-related receipts are exempt from gross receipts as a matter of law. Specifically, first, Taxpayer argues that trademark license fees are not subject to gross receipts tax because they are not "property" under the plain meaning of Section 7-9-3(J) (2007). Second, Taxpayer argues that the hearing officer erred by concluding that the Department does not have to "unbundle" receipts related to the Franchise Agreement. Taxpayer argues that in this case, there is nothing in the Franchise Agreement to unbundle, but if there is, the Legislature has determined that unbundling is required when dictated by the facts of a case. Taxpayer also argues that it would not be administratively inconvenient for the Department to unbundle the components of the Franchise Agreement, because it was already done to abate portions of the assessment that were abated by the hearing officer.

**{18}**   The hearing officer concluded that the sale of a license to use a franchise employed in New Mexico necessarily includes the sale of the trademark, and receipts from the sale of the trademark license under the Franchise Agreement are therefore subject to gross receipts tax. Moreover, the hearing officer concluded, "[w]ithin the framework of what constitutes a franchise for the purposes of the [A]ct, there is no requirement that the Department unbundle, for gross receipts purposes, the grant of a license to use Taxpayer's trademarks from other elements of the Franchise Agreement."

**{19}** We first address the statutory framework of property within the definition of "gross receipts." Prior to 2007, the Legislature categorized "gross receipts" as the total amount of money from: "selling property located in New Mexico, . . . leasing or licensing property employed in New Mexico, . . . selling services performed outside New Mexico, [and] . . . performing services in New Mexico." Section 7-9-3.5(A)(1) (2006). Property was defined as "real property, tangible personal property, licenses and franchises." Section 7-9-3(J) (2006).

**{20}** In 2006, the New Mexico Supreme Court held that when a franchise agreement is executed out-of-state, it is considered to be an out-of-state sale, and thus not considered to fall within the definition of "gross receipts." *Sonic Indus. Inc. v. N.M. Taxation & Revenue Dep't*, 2006-NMSC-038, ¶ 14, 140 N.M. 212, 141 P.3d 1266, *superseded by statute as stated in A&W Rests., Inc. v. Taxation & Revenue Dep't of N.M.*, 2018-NMCA-069, ¶ 17, 429 P.3d 976, *cert denied* 2018-NMCERT___, (S-1-SC-37272, Oct. 26, 2018). Less than a year after this decision, the Legislature amended the Act. The Legislature amended Section 7-9-3.5(A)(1) (2007) to define "gross receipts" as:

> the total amount of money or the value of other consideration received from selling property in New Mexico, from leasing or licensing property employed in New Mexico, *from granting a right to use a franchise employed in New Mexico*, from selling services performed outside New Mexico, the product of which is initially used in New Mexico, or from performing services in New Mexico.

(Emphasis added.) Likewise, the Legislature amended Section 7-9-3(J) (2007) to define "property" as "real property, tangible personal property, licenses other than the licenses of copyrights, trademarks or patents and franchises."

**{21}** After briefing in the current appeal was complete,[4] this Court was faced with reconciling the impact of the two 2007 statutory amendments on the taxability of trademark licensing royalty fees contained within a franchise agreement. *See A&W Rests., Inc.*, 2018-NMCA-069, ¶ 5. We stated that the crucial question under the statutory amendments is "whether the royalty fees flowing from this particular trademark licensing provision should be treated as being received from the grant of a franchise or from the licensing of a trademark." *Id.* ¶ 12. This Court held that the Legislature effectively overruled our Supreme Court's decision in *Sonic Indus. Inc.*, which rendered franchise agreements with out-of-state franchisers non-taxable. *Id.* ¶ 17. We held that the 2007 amendment to Section 7-9-3.5(A)(1) restored the taxability of franchise agreements, even those entered into out-of-state, so long as they are employed in New Mexico. *A&W Rests.*, 2018-NMCA-069, ¶ 17. This Court acknowledged that while trademark licenses are still not considered "property" under the 2007 amendment to Section 7-9-3(J), in that case, the trademark provision was "notably different from a

---

4 We acknowledge that the parties have not had an opportunity to argue the application of *A&W Restaurants, Inc.*, but have determined that supplemental briefing regarding application of our recent ruling is not necessary for us to resolve this appeal.

traditional trademark license, which exists apart from a franchise agreement." *Id.* ¶ 19. Moreover, this Court did not treat the trademark licensing provision in that case as a separate line item in the franchise agreement, in part, because it was at "the heart of the franchise agreement." *Id.* ¶ 18.

**{22}**    The present case is similar to *A&W Restaurants, Inc.* We again face the taxability of a trademark license provision contained within a franchise agreement. Taxpayer granted to CCI the right to operate a franchised ATC Healthcare Services Center and to offer and sell temporary and permanent medical personnel services, while using Taxpayer's proprietary marks. Like *A&W Restaurants*, here, the Franchise Agreement is applied in New Mexico, where CCI set up its franchise. Also, the trademark provision is part of the Franchise Agreement, unlike a traditional trademark license that would exist apart from a franchise agreement. *See id.* ¶ 19. Thus, the receipts received for the trademark license are part of the Franchise Agreement and are not a separate, standalone transaction. Moreover, in addition to granting CCI a trademark license, Taxpayer continued to perform personnel services for CCI, as set out in the Franchise Agreement. This further supports that the Franchise Agreement was not merely a trademark license contract, but was part of the operation of the franchise. Accordingly, we conclude that the trademark licensing provision at issue in this case should be treated as part of the franchise for purposes of gross receipts. We therefore hold that the hearing officer did not err as a matter of law by affirming the Department's assessment of Taxpayer's trademark licensing receipts.

**{23}**    Having determined that the hearing officer did not err in concluding that Taxpayer's receipts fall into Section 7-9-3.5(A)(1)'s definition of "gross receipts," and finding this issue dispositive for whether trademark licensing receipts are taxable, we see no need to reach Taxpayer's argument regarding the hearing officer's determination that the Franchise Agreement need not be unbundled. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 36, 137 N.M. 26, 106 P.3d 1273 ("A reviewing court generally does not decide academic or moot questions.").

III.    **The Hearing Officer Did Not Err as a Matter of Law in Affirming the Assessment of Gross Receipts for the Money Taxpayer Received for Services Performed Out-of-State**

**{24}**    Taxpayer asserts that the money it received for payroll, billing, and collections by Taxpayer in New York is exempted from gross receipts under Section 7-9-13.1(A) because the services were performed out-of-state. Taxpayer argues that as a matter of law, the portion of the assessment imposing gross receipts tax on Taxpayer's forty percent of gross margin received from performing services for CCI out-of-state are not subject to the gross receipts tax.

**{25}**    The hearing officer rejected Taxpayer's argument because (1) "the services in question were performed to pay Taxpayer's New Mexico employees," and (2) "[t]he activities performed by Taxpayer were part and parcel" of the Franchise Agreement between CCI and Taxpayer under which "CCI paid Taxpayer franchise fees for [the]

right to use the franchise in New Mexico." The hearing officer concluded that to require the Department to unbundle certain aspects of the Franchise Agreement based on the franchisor's performance location is also inconsistent with Section 7-9-3.5(A)(1). Because consideration of a grant of a franchise is taxable in New Mexico, the hearing officer concluded that Taxpayer's out-of-state services were taxable.

**{26}** Taxpayer argues that Section 7-9-13.1(A) controls and dictates an outcome contrary to that reached by the hearing officer. This statutory provision states that "exempted from the gross receipts tax are the receipts from selling services performed outside New Mexico[,] the product of which is initially used in New Mexico." Section 7-9-13.1(A). However, Section 7-9-13.1(A) does not contemplate a franchise in its plain language, whereas Section 7-9-3.5(A)(1) does. *See United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 9, 148 N.M. 426, 237 P.3d 728 ("The first guiding principle in statutory construction dictates that we look to the wording of the statute and attempt to apply the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (alteration, internal quotation marks, and citation omitted)); *see* NMSA 1978, § 12-2A-19 (1997) ("The text of a statute or rule is the primary, essential source of its meaning."). Taxpayer's activities fall squarely within Section 7-9-3.5(A)(1)'s definition of gross receipts as "the total amount of money or the value of other consideration received . . . from granting a right to use a franchise employed in New Mexico[.]" *Id.* Under the Franchise Agreement, Taxpayer was responsible for billing and collections of CCI's clients, and was responsible for payroll of CCI's employees. Taxpayer performed these out-of-state personnel services to support CCI's franchised business. Therefore, because these services assisted CCI in the operation of the franchised business, the activities fall within Section 7-9-3.5(A)(1)'s definition of taxable "gross receipts." *See A&W Rests. Inc.*, 2018-NMCA-069, ¶ 20 (stating that "a franchise is to be treated as a compound or 'bundled' form of property, which typically includes . . . a commitment by the franchiser to perform various services to assist the franchisee in the operation of the franchised business" (internal quotation marks and citation omitted)).

**{27}** We therefore conclude that the hearing officer did not err as a matter of law by affirming the Department's assessment of Taxpayer's receipts for performing payroll, billing, and collection services out-of-state.

## IV.     The Hearing Officer Did Not Err in Abating Taxpayer's Penalty

**{28}** The Department cross appeals the hearing officer's abatement of the Department's penalty assessment. The Department argues that Taxpayer acted negligently pursuant to NMSA 1978, Section 7-1-69(A) (2007) because Taxpayer was unaware of the legislative change that directly brought Taxpayer's franchise and activities within the definition of the gross receipts tax. Taxpayer responds that this Court should affirm the hearing officer's abatement of the penalty against Taxpayer because, at most, Taxpayer's alleged failure to pay was the result of a mistake of law made in good faith. It contends that there were reasonable, good faith, grounds to

believe that tax was not due on most of the receipts at issue. The hearing officer abated the penalty, based on his finding that Taxpayer's failure to pay gross receipts tax was a mistake of law made in good faith on reasonable grounds.

**{29}**   A taxpayer is subject to a penalty for failure to pay gross receipts taxes "due to negligence or disregard of department rules and regulations, but without intent to evade or defeat a tax[.]" Section 7-1-69(A). Negligence is defined by the administrative code as the "failure to exercise that degree of ordinary business care and prudence which reasonable taxpayers would exercise under like circumstances"; or "inaction by taxpayers where action is required"; or acting with "carelessness, erroneous belief or inattention." 3.1.11.10(A)-(C) NMAC. However, Section 7-1-69(B) provides for an exception for "a mistake of law made in good faith and on reasonable grounds."

**{30}**   We agree with the hearing officer that there was evidence of a good faith mistake of law. As case law and legislative amendments evolved, the applicability of gross receipts taxes to franchise-related receipts of a disclosed agent, and receipts received for out-of-state services during this audit period resulted in varying and evolving interpretations of the law. Indeed, for the first half of the audit period, Taxpayer's interpretation of the taxability of the franchise-related receipts was legally correct, causing the hearing officer to abate the assessment of pre-June 27 2007 receipts. Moreover, with respect to post-June 2007 receipts, this Court did not clarify the effect of the 2007 amendments until 2018 in *A&W Restaurants Inc.*, well after the period for which Taxpayer was assessed. In light of these varying and evolving cases and statutes, we conclude that there was substantial evidence that Taxpayer's mistake in this case was a mistake of law made in good faith and on reasonable grounds. We conclude that there is no basis on which to conclude that the hearing officer acted arbitrarily or capriciously, or abused his discretion in abating Taxpayer's penalty. Nor can we say that the conclusion was not in accordance with law. Therefore, the hearing officer did not err by abating Taxpayer's civil negligence penalty under Section 7-1-69(B).

**CONCLUSION**

**{31}**   For the aforementioned reasons, we affirm the hearing officer's decision and order.

**{32}   IT IS SO ORDERED.**

**M. MONICA ZAMORA, Chief Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JULIE J. VARGAS, Judge**